UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------------X

MALIBU MEDIA, LLC,

                      Plaintiff,

vs.

ROBERT DARE,

                      Defendant.

Civil No. 0:14-cv-61957

------------------------------------------------------------------X

**PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING PLAINTIFF TO SERVE A THIRD PARTY SUBPOENA ON COMCAST CABLE**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel, moves for the entry of an order authorizing Plaintiff to serve Defendant Robert Dare's ("Defendant") internet service provider, Comcast Cable ("Comcast"), with a third party subpoena *duces tecum* for deposition *de bene esse* (the "Subpoena"). Plaintiff states as follows in support.

I.    **INTRODUCTION**

This is a copyright infringement lawsuit that concerns Plaintiff's assertion that Defendant utilized his wireless internet connection provided by Comcast to illegally download, copy, and redistribute pirated copies of seventeen (17) of Plaintiff's copyrighted works. Comcast possesses relevant documents and information related to this suit. Specifically, Comcast has documents and information referring or relating to (a) DMCA notices and copyright infringement notices that it sent to Defendant ("Notices of Infringement"); (b) the subscriber notification letter it sent to Defendant regarding the release of Defendant's identifying information in this lawsuit; (c) its

1

lease of any electronic devices to Defendant, including the rental of modems and routers; (d) its policies and procedures regarding password installation for modems and routers; and (e) the reliability and admissibility of its correlation of Defendant's IP address to Defendant.  Plaintiff now moves for entry of an order authorizing it to serve a Rule 45 subpoena upon Comcast to produce the foregoing relevant information and provide deposition testimony regarding same.  For the Court's convenience, the Subpoena Plaintiff intends on serving Comcast is attached hereto as an exhibit.

## II.   ARGUMENT

### A.  Legal Standard

Under the federal rules, parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 26 is to be liberally construed to permit broad discovery—"[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  As Your Honor has aptly explained, "[i]t is well settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Barrington v. Mortgage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, *3 (S.D. Fla. Dec. 10, 2007) (citation omitted); *see also* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable in Rule 34 and other discovery rules").  Plaintiff's request to issue a third party Rule 45 subpoena upon Comcast is thus governed by Rule 26's flexible standard.

Comcast is a cable operator within the meaning of the Cable Act.  *See* CM/ECF 7.  The Cable Act does not impose any limitations on the scope of discovery in a lawsuit, but states that

a court order is necessary for the disclosure of subscriber information.  *See* 47 U.S.C. § 551(c) ("A cable operator may disclose such information if the disclosure is …made pursuant to a court order authorizing such disclosure.").  Consequently, the pivotal inquiry for the subject Motion is whether the Subpoena seeks relevant information.  *See Barrington*, 2007 WL 4370647 at *3; *Wagner v. Viacost.com*, No. 06-81113-CIV, 2007 WL 1879914, *1 (S.D. Fla. June 29, 2007) (same).  As discussed below, it does.

### B.  Prior Notices of Infringement are Relevant and Discoverable

At the heart of this lawsuit is Plaintiff's contention that Defendant infringed Plaintiff's copyrights for a three month period between March and June of 2014.  *See* CM/ECF 8.  As set forth in its Amended Complaint, however, Plaintiff also logged Defendant's IP address engaging in BitTorrent transactions associated with 267 third-party files between July 2013 and August 2014.  This evidence of extensive BitTorrent use implicates Defendant as an infringer of a large amount of third-party content and makes it conceivable—if not probable—that Defendant received prior and additional Notices of Infringement.  Comcast can confirm this because it "sends [Notices of Infringement] to customers when Comcast has received a notice from a copyright owner … stating that it believes [the customer] may have wrongly downloaded or made available for others to download its copyrighted content … via a peer to peer file sharing program."[1]

Although Defendant denies receiving prior Notices of Infringement, Plaintiff is entitled to corroborate this.  That is, Plaintiff is entitled to discover the details and extent to which Comcast

---

[1] http://customer.comcast.com/help-and-support/internet/what-is-copyright-alert html (last accessed on December 3, 2014.)

sent Defendant prior Notices of Infringement, as this information is highly relevant to both Plaintiff's claims and Defendant's defenses. Plaintiff has alleged that Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2). CM/ECF 8. Defendant denies this, and insists that the infringements were "not caused by a volitional act attributable to Defendant." CM/ECF 15. Defendant alternatively insists that to the extent he did infringe, he did so "unknowingly." *Id.* One of Defendant's affirmative defenses in fact specifically claims that Defendant's infringement qualifies as "innocent infringement" insofar as Defendant did not realize using a BitTorrent protocol to download content constitutes copyright infringement. *See id.* at p. 8–9 ("if Defendant did unknowingly commit the download, he was not aware of any copyright infringement.").

Clearly, evidence that Defendant had received one or more Notices of Infringement for his BitTorrent use would be incredibly relevant to these issues—it would make it more likely that Defendant is liable for the at-issue infringements and that the infringements were "willful" and not "innocent." First, since prior Notices of Infringement relate to Defendant's BitTorrent use, receipt of prior Notices of Infringement establishes that Defendant was using BitTorrent during the period of recorded infringement. Quite obviously, this speaks to Defendant's knowledge, intent, and "know how"—it shows that he had the wherewithal and ability to commit the infringements and makes his liability more likely. Second, if Defendant received one or more prior Notices of Infringement, it would show that Defendant was aware that his internet service was being used to infringe copyrights, thus making it more likely that Defendant is directly or contributory liable. Third, because Defendant denies receiving prior Notices of Infringement, evidence to the contrary is relevant impeachment evidence.

### C. The Notification Letter Defendant Received Regarding this Lawsuit is Relevant and Discoverable

Since Plaintiff could initially only identify Defendant by his IP address, this Court entered an order on September 30, 2014, allowing Plaintiff to serve a Rule 45 subpoena on Comcast to identify Defendant and directing Comcast to notify Defendant of this action as required by 47 U.S.C. § 551(c)(2)(B). *See* CM/ECF 7. Comcast did so, but Defendant's discovery responses indicate that Defendant is no longer in possession of the documents that Comcast sent him notifying him of this action. Plaintiff now seeks a copy of those documents.

Documents that directly relate to the notification of this lawsuit, and which were issued in conjunction with this lawsuit, are obviously relevant to this lawsuit. Among other things, these documents definitively establish the timing of Defendant's knowledge of Plaintiff's claims and therefore, in turn, demonstrate when Defendant's duty to preserve evidence was triggered. Here, Defendant's discovery responses indicate that the computer he used to infringe Plaintiff's copyrighted works has since been transferred to a third party. To advance claims regarding the spoliation or suppression of relevant computer evidence, Plaintiff needs to demonstrate when and how Defendant was notified of this litigation.

### D. Documents Regarding Comcast's Lease of Devices or Equipment to Defendant are Relevant and Discoverable

To discover the hard drives and computer equipment (*e.g.*, modems and routers) that Defendant utilized to infringe Plaintiff's copyrighted works, Plaintiff issued interrogatories to request specific information regarding same. Defendant declined to identify all the modems and routers that were in use in his home during the period of recorded infringement, instead only identifying a subset of those devices, those that he represents he directly used. *See* Defendant's

Response to Interrog. No. 5 ("Defendant will limit his answers to the modems and routers used <u>by him</u> at his home address which connected to the computer devices listed in Defendant's answer to Interrogatory No. 4."). Based on the discovery responses, it remains unclear whether and the extent to which Comcast leased Defendant electronic devices or equipment. Plaintiff now seeks to obtain this information from Comcast.

      Although Defendant's discovery responses imply that Defendant never directly used any Comcast-provided devices during the pertinent time period, Plaintiff has an absolute right to test that assertion. Plaintiff need not accept Defendant's vague and self-serving representation that no Comcast-provided devices were utilized because this issue goes to the heart of the litigation. If Comcast leased electronic devices and equipment to Defendant—a fact that Defendant will neither admit nor deny—, then Plaintiff is entitled to learn the make and model of those devices and equipment. Such information is incredibly relevant because routers and modems have different capabilities, settings, and Wi-Fi ranges. For some routers it is impossible to configure the main network without a password, and other routers auto-generate lengthy alphanumeric passwords. In addition, most routers have limited strength and signal; only a computer device within a certain distance can even access the router. Even if a signal is accessible, the signal strength drastically diminishes if the signal extends too far or has to pass through barriers like walls, trees, fences, etc.

      Identifying the brand name and model number of electronic devices and routers that Comcast leased to Defendant is therefore highly relevant because this evidence—when considered along with physical evidence associated with Defendant's residence—provides the predicate for an expert WiFi opinion. If Comcast confirms that it leased to Defendant an

electronic device or router that would make it impossible to configure Defendant's main wireless network without a password, then that fact would undermine Defendant's assertion that his wireless internet was <u>not</u> password protected during all or any part of the infringement period.  If Comcast confirms that it leased to Defendant an electronic device or router that has an extremely limited signal reach, then that fact would confirm that the infringement emanated from within Defendant's home.  Needless to say, documents regarding Comcast's lease of equipment to Defendant can greatly impact the weight of the circumstantial evidence in this case and has the tendency to make it more likely that Defendant is the responsible infringer.

### E. Documents Regarding Comcast's Password Policies and Procedures are Relevant and Discoverable

In his discovery responses, Defendant refuses to state whether Comcast furnished a modem or router, and he does not disclose whether a Comcast technician installed any of his electronic devices.  Further, Defendant states that the only communications or instructions he received from Comcast pertain to his "monthly billing notices and promotional emails" (*i.e.*, Defendant indicates that Comcast did not provide him with any notices or instructions regarding protecting his wireless internet with a password).

Plaintiff now seeks discovery to test and corroborate these assertions.  To that end, Plaintiff's Subpoena will seek documents and information on Comcast's policies and procedures regarding the setup of a wireless internet password.  Significantly, Comcast appears to have in place strict policies and procedures that require Comcast subscribers to protect their Comcast-

provided wireless internet connections "with a strong password."[2] Plaintiff seeks to learn more details about these policies and procedures. This information is highly relevant because it appears very possible—if not probable—that Comcast notified Defendant of his obligation to secure his wireless internet with a password and either placed (or instructed Defendant on how to place) a password on his internet connection. If Comcast confirms this, this evidence would severely undermine Defendant's affirmative defense that the infringement of Plaintiff's works "was not caused by a volitional act attributable to Defendant," as well as Defendant's more general contention that his wireless internet may not have been password protected. Unquestionably, the discovery Plaintiff seeks has a direct tendency to make Defendant's liability more likely.

### F. Documents Regarding Comcast's Correlation of IP Address 98.249.146.169 to Defendant are Relevant and Discoverable

Finally, Plaintiff's Subpoena will seek documents, information, and deposition testimony related to Comcast's correlation of IP address 98.249.146.169 to Defendant. The reliability of Comcast's correlating techniques is highly relevant because it will likely show that the correlation in this case was accurate. Indeed, internet service providers in similar cases have testified that they correlate IP addresses to internet subscribers in the regular course of business and that they are "absolutely certain" that such correlations are correct. Such powerful testimony, if provided in this case, will provide the predicate for Plaintiff's ability to lay the foundation for the introduction of the correlation evidence at trial. This is essential to prove Plaintiff's claims and it will virtually foreclose the viability of any defense that Comcast

---

[2] *See generally*
https://www.comcast.com/Corporate/Customers/Policies/~/Media/Files/Legal/HighSpeedInternetAUP/InternetAcceptableUsePolicy.ashx

somehow misidentified Defendant as the internet subscriber of the infringing IP address, rendering any such defense impermissibly speculative and unsupported. Discovery concerning Comcast's correlation to Defendant goes to the heart of the controversy.

### G. Deposing Comcast is Necessary

Plaintiff respectfully requests that Comcast not merely produce the forgoing documents, but that a Comcast representative also attend a brief deposition to discuss same. This request is necessary (a) so that Plaintiff can avoid surprises at and properly prepare for trial and (b) so that Plaintiff can read Comcast's deposition testimony into evidence at trial in the event a Comcast representative is unable to attend trial.

### III. CONCLUSION

Since Plaintiff's Subpoena requests documents, information, and deposition testimony that clearly qualify as discoverable under the Federal Rules, Plaintiff respectfully requests that the Court grant the subject and enter an order authorizing Plaintiff to serve a third party subpoena *duces tecum* for deposition *de bene esse* on Comcast. A proposed order is attached hereto.

### CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1(a)(3), undersigned conferred with Defendant's Attorney in a good faith effort to resolve the issues raised in this Motion. Defendant's Attorney advised that she objects to the issuance of Plaintiff's proposed third party subpoena.

By: /s/ *Daniel C. Shatz*

Respectfully submitted,

LIPSCOMB EISENBERG & BAKER, PL

By: /s/ *M. Keith Lipscomb*
**M. Keith Lipscomb, Esq.**
Florida Bar No. 429554

9

klipscomb@lebfirm.com
**Daniel C. Shatz, Esq.**
Florida Bar No. 94696
dshatz@lebfirm.com
**Emilie Kennedy, Esq.**
Florida Bar No. 92808
ekennedy@lebfirm.com
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that on August 31, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Daniel C. Shatz*