**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
|      Plaintiff, | ) |
| v. | )   Civil Action No. |
| | )   0:14-cv-61957-JIC |
| ROBERT DARE, | ) |
| | ) |
|      Defendant. | ) |
| _____ | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR**
**RECONSIDERATION (DOC. 72)**

COMES NOW, Defendant, ROBERT DARE, by and through his undersigned counsel, pursuant to the Local Rules and this Court's Order [74], responds to Plaintiff's motion [72] for reconsideration of order [71] denying Plaintiff's motion [69] to compel production of Defendant's "newly disclosed computer."

**I.**    **Introduction**

"All attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir. 1993). Yet Plaintiff filed a Motion for Reconsideration (Doc. 72) riddled with false and misleading statements. The most brazen being,

> Defense Counsel reserved her right to rely on her initial objections for purposes of admissibility at trial, but agreed to accept Plaintiff's production

> request, as limited and reframed in
> Plaintiff's letter, and advised
> Plaintiff that Defendant would not
> withhold production to the narrowed
> request under an overbreadth or any
> other objection.

Doc. 72 at 5. As explained in more detail below, such an agreement was simply never entered into. Defendant and counsel have always maintained the objections that the time frame should be limited to the period of alleged downloads.

Unabashedly, Plaintiff makes additional false or misleading statements, including, without limitation:

1. "Throughout this litigation and up until the deposition of Defendant's wife, both Defendant and his attorney advised Plaintiff that between May 2012 and May 2015, Defendant did not own any personal computers, but instead only used a computer provided by his former employer" (Doc. 72 at 12). However, such statement is patently false, as demonstrated by Defendant's objection to Plaintiff's Interrogatory No. 4, which asked Defendant to:

> Identify by brand, trademark, model number, version and by any other relevant form of identifier each of the Computer Devices used in your home during the preceding two years and for each such Computer Device, state when it was purchased, from where it was purchased, who is authorized to use the Computer Device, who has been authorized to use the Computer Device, the times during which each such person was authorized to use the Computer Device, and identify the person who primarily uses the Computer Device.

Defendant objected but agreed to limit his answer to non-objected parameters, as follows:

> Defendant further objects to the overbreadth in that this interrogatory seeks Computer Devices used within the last two years. Based on Plaintiff's amended complaint, however, the alleged download period is from March to June 2014. Therefore, computer devices that were not used during this period, such as computer devices purchased after the last "Hit Date," would be wholly irrelevant to Plaintiff's claims of BitTorrent downloading from March to June 2014. Accordingly, **Plaintiff will limit his answer to devices that have been used by him, in his home, within the period of March to June 2014**.

(Emphasis added.) Defendant was explicit that he would identify only devices used from March to June 2014.

2.    "Defendant reneged on his earlier agreement to coordinate with his former employer in a good-faith effort to obtain access to the MacBook Pro" (Doc. 72 at 6). Besides being irrelevant to this motion, Defendant simply never agreed to obtain access to his employer's MacBook Pro. Rather, he unambiguously stated that the laptop "was returned to the company in August of 2014." (Doc. 54-2 at 9.) Any misunderstood inference by Plaintiff that Defendant would reach out to his former employer to get a computer (outside his possession, custody, or control) could have been cleared up if Plaintiff had not waited two and a half months after production — until two days before the discovery deadline — to confer about such response.

3.    "Plaintiff's counsel explicitly asked Defense Counsel whether Defendant had not disclosed any other computer devices based upon any objections and whether additional computer devices existed" (Doc. 72 at 6). Contrary to Plaintiff's assertion, however, Defense Counsel was explicit in directing Plaintiff to Defendant's interrogatory answer — which was limited to only computers used "within the period of March to June 2014" — and

indicating that further questions would need to be directed to Defendant in a deposition.

4.    "Defendant lied under oath about not receiving DMCA and copyright infringement notices, even falsely testifying that he checked the email account to which Comcast sent him five (5) such notices" (Doc. 72 at 13), when Defendant *did not lie*, Plaintiff cannot prove he lied, and Plaintiff is merely speculating[1];

5.    Finally, Plaintiff leads the court to believe the hasty generalization that, because Defendant admitted to having previously used "Transmission," he must have downloaded Plaintiff's films (Doc. 72 at 9, n. 6) ("It certainly warrants emphasis that of all the numerous BitTorrent clients out there, the 'Transmission' BitTorrent software is the exact one that Plaintiff recorded infringing its copyrighted works"). Besides being one of the top 5 BitTorrent clients used [2], Transmission is specifically tailored for use on Macintosh computers. Therefore, if a neighbor had a Macintosh, which is quite likely,[3] it is also very likely that same neighbor would also have used Transmission.

---

[1] As Plaintiff indicated, it did not depose anyone from Comcast.

[2]    *E.g.*, P&P & File Sharing Software for Mac, http://download.cnet.com/mac/p2p-file-sharing-software/?sort=downloadCount~desc (Listing Transmission as the top-rated client and showing it to have had 355,429 downloads since July 2014); Alan Henry, *Five Best BitTorrent Clients*, Lifehacker (May 17, 2015) http://lifehacker.com/5813348/five-best-bittorrent-applications; Manuel Jose, *Top 5 Bit Torrent Clients For Ubuntu*, TechDriveIn, http://www.techdrivein.com/2011/01/top-5-bit-torrent-clients-for-ubuntu.html (2011).

[3] In April 2014, analysts estimated that Apple Computers sold from 3.7 million to 4.8 million Macintosh computers in the fourth quarter of 2013.  Philip Elmer-DeWitt, *How many Macs did Apple sell last quarter?* Fortune (Apr. 19, 2014), http://fortune.com/2014/04/19/how-many-macs-did-apple-sell-last-quarter-7/

## II. **Plaintiff wrongly accuses Defendant of suppressing evidence**

Plaintiff sued Defendant for allegedly downloading copies of Plaintiff's videos on extremely specific dates and times ranging from March 15 through June 8, 2014. *See* "hit dates" on Doc. 8-1.

More than five months ago, on May 12, 2015, Plaintiff propounded its first requests for production to Defendant. Request No. 1 was grossly overbroad.

As such, on June 19, 2015, when Defendant served his responses, he strongly objected to No. 1 (Doc. 69-1 at 2-5). Pertinent among these objections was the overbreadth of seeking documents from "all" hard drives, not just "documents on hard drives used by Defendant in his home within the alleged download period (. . . March through June 2014)." Doc. 69-1 at 2-3. Defendant expressly objected that if he "did not use a particular hard drive during that period, a search on it would not be relevant." Doc. 69-1 at 3. Defendant thus said he was "limiting his response to documents obtained from the hard drives used by him within the alleged download period (March through June 2014)."

Similarly, also on June 19, 2015, when serving his response to Plaintiff's interrogatories (Doc. 54-2),

Defendant objected to Plaintiff's request to identify each computer used within the "preceding two years." (Doc. 54-2 at 7-9.) He objected that computer devices not used during the alleged download period "would be wholly irrelevant to Plaintiff's claims of BitTorrent downloading from March to June 2014" and concluded that he would "limit his answer to devices that have been used by him, in his home, within the period of March to June 2014." (Doc. 54-2 at 8.)

These objections to Plaintiff's discovery are extremely reasonable because a computer used outside this period could not possibly have been used to download Plaintiff's videos, and a search on same would result in an undue burden.

At the time of responding to these requests, Defendant did have (and still has) a computer.  However, he has not actually **used** that computer since 2013.  Rather, it has been shelved in his closet for almost two years.  It is an old computer, a MacBook Pro 2,2, circa 2006.  While it might not be "obsolete," a 2006 model is painfully sluggish compared to newer models.  Moreover, as Defendant disclosed in his interrogatory response, his (now former) employer, OpenPeak, issued to him a (newer) MacBook Pro in July 2013 (Doc. 54-2 at 9). Because Defendant had no use for the old computer, he shelved it.

In fact, to ensure that he definitely had not used the computer during this time frame, Defendant pulled this old laptop out of the closet and powered it on for the sole purpose of checking the last log-on date, which was revealed to him as "Tue Dec 3 09:09:14 EST 2013," or December 3, 2013 — four months prior to the first alleged "hit date."  Therefore, because Defendant did not use the computer at any time after December 3, 2013, there is *no possible way on earth* he could have used it to download Plaintiff's videos.  Accordingly, it is outside the scope of relevance, and searching it for Plaintiff's videos would be futile.

On July 10, 2015, Defendant sent to Plaintiff supplemental production.  Although Defendant mentioned No. 1 in his responsive document, his production to No. 1 did not change.

For the 30 days that followed Defendant's objections served June 19 or supplemental production served July 10, 2015, Plaintiff mentioned nothing about any potential insufficiency in same.  Plaintiff simply never brought it up. Until August 31, 2015, that is — four days before the discovery deadline.[4]

---

[4] At the time, the discovery deadline was September 4, 2015 (Doc. 25 at 1).

Local Rule 26.1(i) provides that "All motions related to discovery, including but not limited to motions to compel discovery and motions for protective order, shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought. . . ."

On or about August 31, 2015, four days before the discovery deadline, Plaintiff's attorney Jessica Fernandez contacted the undersigned and said she wanted to schedule a telephone conference to discuss discovery but first wanted to send a "short" letter. On August 31, 2013, at 8:26 p.m., she sent the letter at Doc. 72-2. Lacking time to read the 20-page, single spaced letter and thinking a telephone conference would be much more efficient (especially given the time constraints), the undersigned immediately replied stating so (see Exhibit "1," email to Fernandez). As also indicated in Defendant's response to Plaintiff's first request to extend discovery (Doc. 54 at 2), these sudden communications — just four days before the close of discovery — indicated that Plaintiff was dilatory in reviewing Defendant's discovery responses.

### III. **Plaintiff misleads the Court by concocting an "agreement" that never happened**

On September 2, 2015[5] — two days before the discovery deadline and, again, more than 30 days after Defendant had made production — the undersigned had a telephone conference with Jessica Fernandez. The undersigned expressly stated that she had not looked at Ms. Fernandez's 20-page letter but would nevertheless discuss the actual discovery responses. Ms. Fernandez agreed. During the conversation, Ms. Fernandez reviewed her letter and realized that it contained errors, including at least one misnumbered request. Therefore, the conversation focused not on her letter but rather the actual discovery requests and responses. As such, the telephonic conferral mooted Ms. Fernandez's letter, which was never again discussed or revisited — until its attachment to Plaintiff's motion.

During the telephone conference, in discussing Defendant's response to No. 1, Ms. Fernandez wanted to know what had happened with the search of the computer. Realizing that Ms. Fernandez was obviously unfamiliar with Defendant's interrogatory answers, the undersigned directed Ms. Fernandez to Defendant's interrogatory No. 4 answer

---

[5] There was no telephone conference on September 1, 2015, as Plaintiff wrongly states (Doc. 72 at 5); the conference took place on September 2, 2015.

(Doc. 54-2 at 7-9), which listed all computer "devices that have been used by him, in his home, within the period of March to June 2014" (Doc. 54-2 at 9). Based on that answer, the undersigned stated, it was clear that the only devices Defendant currently has which used during the alleged download period are iPhones and iPads.  Ms. Fernandez asked about the MacBook, and the undersigned again read the interrogatory answer to Ms. Fernandez and explained that it "[w]as a work-issued laptop and was returned to the company in August of 2014" (Doc. 54-2 at 9) and was no longer in Defendant's possession. She then said not to worry, that the Plaintiff would just get that laptop from another source.[6]

Ms. Fernandez asked about the "search results," and undersigned said that no documents responsive to the search were found. Undersigned later sent Ms. Fernandez a copy of the receipt showing that a search had been performed in the iPads and iPhones (Doc. 72-4).

---

[6] Defendant never, as Plaintiff falsely states, "agreed to coordinate with his former employer to obtain access to the MacBook to perform Plaintiff's requested document search" (Doc. 72 at 4 ¶ 3.)  Rather, *that* computer — which is wholly separate from the closeted MacBook Pro 2,2 (circa 2006) — did not belong to Defendant, had long been returned to his former employer, and Defendant had no control over same. Therefore Plaintiff's representation to the court that Defendant "agreed to coordinate" access to that other computer is (1) misleading because it is about an entirely different MacBook that has absolutely nothing to do with the closeted computer and (2) a complete fabrication because no such agreement ever happened.

Ms. Fernandez suggested that the relevant time frame should have extended as far back as July 2013. **Undersigned emphatically disagreed and said that dates that far back were not relevant, since the first alleged date that Plaintiff's video had been downloaded was in March 2014.**

Plaintiff's representation that "Defense Counsel . . . advised Plaintiff that Defendant would not withhold production to the narrowed request" (Doc. 72 at 5) is patently false. Moreover, because Ms. Fernandez was discussing this issue for the very first time more than thirty days after production and only two days prior to the discovery deadline, with no reasonable cause for the delay, the undersigned considered Plaintiff's sudden last-minute attempt to request additional discovery waived in accordance with Local Rule 26.1(i). Plaintiff again relies on this false representation when it states that Defendant's closeted "computer fell within the time period asked in Plaintiff's Production Request No. 1, **as amended by party agreement.**" (Doc. 72 at 8, emphasis added.) Shockingly, Plaintiff has concocted a complete falsity. **There was no "party agreement"** to lift the limitation of Defendant's production. Plaintiff falsely states that it is "**undisputed**" that Defendant's closeted computer "is responsive to Plaintiff's Production Request" (Doc. 72 at

9.)   Obviously, this issue is disputed.  Defendant did not "consciously disregard" his discovery duties (Doc. 72 at 9).  Defendant searched the devices he used within the time stated in his response, as stated.

Although Attorney Fernandez **suggested** that Plaintiff's request for production No. 1 should be expanded to devices used within the past two years, Defendant never agreed to such a suggestion, and any assertion of such is a falsehood.  Her assertion that the undersigned made a statement that "all computers . . . in Defendant's possession between May 2012 and May 2015 had been accounted for" (Doc. 72-3 at 2 ¶ 4) is also false.  Rather, the undersigned told her that all computers used within the limitations of Defendant's objections were accounted for. The undersigned's notes from the relevant portion of the telephone conference are (with "JF" to indicate "Jessica Fernandez," and "Me" to indicate the undersigned):

> JF: Want to know about Dare's hard drive.  He doesn't have his Mac anymore?
>
> Me (looking at ROGS): The one he used during that time was a work computer, he doesn't have it anymore.
>
> JF: Where are the search results?
>
> Me: There were no documents responsive to the search. He got a receipt showing that, and I can share it with you.
>
> JF: OK, can you send that.

Me: (Sent her it via email.)

JF: (Looking at email) Was this an expert who conducted the search? We would have to depose the individual to see if he searched.

Me: There is no time to do a deposition. Discovery deadline is Friday.

JF: You mean there is no time to depose the peers in the swarm?

Me: Not in this case. Not now. Discovery deadline is Friday.

JF: Right.

JF: Who is this? I don't see the name of the technician. Who is the person who did the search?

Me: I don't know, that's all I have.

JF: Did they search through allocated space?

Me: I don't know.

JF: He had a MacBook Pro during the period of recorded infringement, right?

Me (correcting the use of "recorded infringement"): "alleged downloads"

JF: Period of "alleged downloads." Whatever you want to call it.

Me: The hard drive he had during that period, as you can see in his interrogatory answers, is not in his possession, custody, or control. It was returned to OpenPeak, his former employer, as indicated in the interrogatory answers.

JF: Right. So no search was done of that hard drive, right?

Me: Yeah.

JF: That's OK – we'll just get that computer from somewhere else . . .

JF: We believe that the search should be limited. Until Present day.

Me: You mean extended. I disagree.

JF: Did he search for deletion programs. Evidence of deletion. Window washer.

Me: Not sure, but, regardless - that is not evidence Plaintiff can use to prove its case.

JF: We want to know if he has things that can erase, delete.

Me: You only want to find things you can use to accuse him of spoliating so you can trap him into a motion for sanctions.

JF: The fact is it can impact the results of the requests for production. We would never, ever accuse someone of spoliating when the computer did not have evidence of spoliation

Me: Your interpretation of "evidence of spoliation" is broader than what I would agree.

JF: I think we can limit this request to July 2013 until when he answered.

Me: No, those dates are not relevant. Going back that far is not relevant, which is why it was objected to.

JF: Wants to narrow in the request...

(*Then we got off on a tangent, began to discuss the actual keywords, things searched*)

JF: How did he do the search?

Me: That is something you would have to ask him in his deposition, but the discovery deadline in this case is on Friday.

The undersigned told her that was all the information that she could provide, and if Plaintiff wanted more information, it would have to conduct Defendant's deposition.[7]

Additionally, Plaintiff's grossly misleading and false histrionics that "Defendant Represents That He Does Not Own A Personal Computer" and so forth (Doc. 72 at 5-6) are fabrications. Plaintiff attempts to accuse the undersigned (and Defendant) of lying, when the undersigned simply directed Plaintiff to Defendant's interrogatory answers, which clearly stated that Defendant was listing the computers <u>used within the alleged download period</u>. Furthermore, Defendant — truly — does not own a personal computer *that was used within the alleged download period*.

---

[7] Plaintiff falsely claims that it asked Defense counsel if all computers were identified, regardless of objections, and that Defense counsel responded affirmatively. Rather, Defense counsel told Ms. Fernandez that, for more information, she would need to depose Defendant. The undersigned simply cannot testify as a witness. Counsel can discuss whether objections are relevant, but Ms. Fernandez's questioning was going into areas where the undersigned could not properly respond. Whatever Plaintiff's "strategic" reasons for choosing to not depose Defendant might be (Doc. 72 at 7), Plaintiff chooses such strategy at its own risk. Therefore, the undersigned is not to blame for any misunderstanding caused by Plaintiff's failure to diligently perform discovery.

Moreover, Plaintiff acts shocked that it learned new things in Defendant's deposition (Doc. 72 at 8 ¶ 8). However, why did it never move to overrule objections to interrogatories and requests for production? Furthermore, learning new things is what depositions are for — which is why, again, Plaintiff chooses this "strategy" at its own risk.

The key phrase here, as strongly stated in Defendant's objections to both Plaintiff's discovery requests, is that computer devices that were not used within the alleged download period where wholly irrelevant.

If Plaintiff had a problem with Defendant's objections which limited responses to devices used within the alleged download period, *Plaintiff should have raised that specific issue and done so within thirty days of Defendant's production and interrogatory answers.* Because Plaintiff did not attempt to discuss Defendant's discovery responses or move to overrule objections within thirty days, Plaintiff waived its right to contest those objections. Plaintiff failed to act diligently and is merely attempting to backpedal to correct its own mistakes.

**IV.**   **Plaintiff misleads the Court that Defendant made a "prior assertion that he does not own a personal laptop . . ." (Doc. 72 at 8)**

Plaintiff's accusation that Defendant lied is, like other of Plaintiff's statements, a fabrication. Plaintiff melodramatically states, "Incredibly, when Plaintiff's Counsel asked Defendant about this never-before mentioned personal non-work laptop, Defendant, after initially denying it, confirmed its existence, proving his prior assertion that he does not own a personal laptop completely false." (Doc. 72 at 8.) During the deposition, Defendant

admitted to <u>owning</u> a computer that he had not used during the alleged download period.  However, as he stated above, Defendant did not make any "false" "assertion that he does not own a personal laptop."  Rather, Defendant made a correct assertion that he did not own a laptop **he had <u>used</u>** during the alleged download period. (Doc. 54-2 at 8). Simply, at no point did Defendant deny owning a laptop in his closet that was not used within that period.

**V.    If, *arguendo*, the Court finds the closeted computer relevant and Plaintiff's motion timely, Defendant should be given an opportunity to perform a search.**

Plaintiff's motion to compel (and motion for reconsideration on same) is actually a motion to overrule Defendant's objections, which Plaintiff never attempted to have the Court do. As clearly stated in his objections, because the closeted computer was not used within the alleged download period, it was not included among the computers Defendant searched. However, if the Court finds that Defendant was wrong in his objection to Plaintiff's overbreadth as to time, and wrong in limiting his response by time, he should be allowed to search his computer for the listed keywords; otherwise, his privacy will be grossly violated. Unrestricted access to Defendant's computer device(s), as Plaintiff requested, is improper. "Rule 34(a) does not grant unrestricted, direct access to a

respondent's database compilations. Instead, Rule 34(a) allows a requesting party to inspect and to copy the product—whether it be a document, disk, or other device—resulting from the respondent's **translation** of the data into a reasonably usable form." *In re Ford Motor Co.*, 345 F.3d 1315, 1316-17 (11th Cir. 2003) (emphasis added). [8] "Like the other discovery rules, Rule 34(a) allows the responding party to search his records to produce the required, relevant data. Rule 34(a) does not give the requesting party the right to conduct the actual search." *In re Ford Motor Co.*, 345 F.3d at 1316-17.

"[T]o gain direct access to the respondent's databases, the court must make a factual finding of some non-compliance with discovery rules and protect respondent with respect to preservation of his records, confidentiality of non-discoverable matters and costs." *Carolina Bedding Direct, LLC*, 3:13-CV-336-J-32MCR, 2013 WL 2431972, at *1 (citing *In re Ford Motor Co.*, 345 F.3d at 1317). Heretofore, despite Plaintiff's accusations

---

[8] See also *Balfour Beatty Rail, Inc. v. Vaccarello*, 3:06-CV-551-J-20MCR, 2007 WL 169628, at *1 (M.D. Fla. 2007) (denying Plaintiff's motion to compel Defendant's hard drive in case alleging destruction of information on Plaintiff's computer, because Plaintiff is not allowed direct access to another party's databases); *Carolina Bedding Direct, LLC v. Downen*, 3:13-CV-336-J-32MCR, 2013 WL 2431972, at *1 (M.D. Fla. 2013) (denying motion to compel Defendant's hard drive in a case premised on Defendant's alleged illegal accessing of Plaintiff's computer system because Rule 34 does not grant unrestricted access to a respondent's database).

otherwise, Defendant has been in full compliance with the discovery rules. He served timely and reasonable objections that he was only searching devices within the relevant alleged download period. He clearly stated that he was only identifying computer devices that he had used within the alleged download period, and only conducting a search on those devices.

Additionally, Defendant's hard drives contain personal and private information not related to this lawsuit. In fact, because there are no copies of Plaintiff's movies on the hard drive, everything that remains is of no relevance.

Therefore, because neither Rule 34 nor governing Eleventh Circuit authority permits unrestricted access to a party's database compilations or computer hard drives, should the Court decide that the computer is relevant and the motion timely, Plaintiff's motion should be denied and this Court should enter a protective order in favor of Defendant, allowing Defendant to perform a search on that computer in accordance with Rule 34.

## VI.  **Conclusion**

Plaintiff failed to demonstrate due diligence in contesting Defendant's discovery objections within a timely manner. Now, after the deadline to move to compel discovery, and just over a month before trial,

Plaintiff resorts to baselessly accuse Defendant and his counsel of lying. Plaintiff's motion is a waste of the Court's time (and of the undersigned's time, especially at a time when she is preparing for trial *__in December__*), and appears to be a tactic to delay the trial period. Furthermore, the motion is based on false statements designed to smear Defendant's counsel and spark the ire of the Court.

WHEREFORE, Defendant, ROBERT DARE, pleads that this Honorable Court DENY Plaintiff's Motion for Reconsideration.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **October 28, 2015,** I filed electronically the foregoing with the Clerk of the Court via CM/ECF system, which will notify electronically all parties.

*Attorney for Defendant:*

**Cynthia Conlin, P.A.**
1643 Hillcrest Street
Orlando, Florida 32803-4809
Tel. 405-965-5519/Fax 405-545-4395
www.conlinpa.com

<u>/s/ Cynthia Conlin, Esq.</u>
[X] CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
Cynthia@cynthiaconlin.com
Secondary Email for Service:
Jeff@cynthiaconlin.com