# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

---------------------------------------------------------------X

MALIBU MEDIA, LLC,

                      Plaintiff,

          vs.

ROBERT DARE,

                     Defendant.

Civil No. 0:14-cv-61957

---------------------------------------------------------------X

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

i

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................. 1

II.   LEGAL STANDARD ............................................................................................ 1

III.  MATERIAL FACTUAL QUESTIONS ................................................................ 2

IV.   FACTS ................................................................................................................... 3

   A.  Plaintiff Owns The Valid Copyrights-In-Suit ................................................... 3

   B.  The BitTorrent Files Are Copies of the Infringed Works ................................. 4

   C.  Comcast Is Certain the Infringing IP Address Was Assigned to Defendant ...... 4

   D.  Comcast's Correlation and Excipio's Business and Computer Records Prove The Infringer Used Defendant's Internet .................................................................................................. 4

   E.  The Infringement Occurred Using BitTorrent and "Transmission" Software; Defendant Admits to Using BitTorrent and the "Transmission" Software ............................. 5

   F.  No Reasonable Juror Could Find Defendant Is Not The Infringer ..................... 5

     (1)  No Rational Juror Could Conclude Anyone Who Lived In Defendant's Home Other Than Defendant Is the Infringer ........................................................................ 5

     (2)  No Rational Juror Could Conclude An Out of Town Guest Is The Infringer ............. 5

     (3)  No Rational Juror Could Conclude A Local Guest Could Be The Infringer .............. 6

     (4)  No Rational Juror Could Conclude A Neighbor Or Lurker Is The Infringer Because The Probability Is 1 In 37,679 .................................................................................. 6

     (5)  The Additional Evidence Points To Defendant Being The Infringer ......................... 7

       i.   Defendant Is A Serial BitTorrent User ....................................................... 7

       ii.  The Probability Of Two Serial BitTorrent Users Living Next To Each Other is 1 In 10,000.................................................................................................... 7

     (6)  Some of Defendant's Material Testimony Has Been Too Fortuitous To Be Credible And Some Is Provably False ....................................................................................... 8

       i.   Defendant's Password Story Is Too Fortuitous To Be Credible.................... 8

       ii.  Defendant Provided False Testimony About Copyright Warning Notices ................. 8

       iii. Defendant's Testimony About The Scope Of His BitTorrent Use Is Incredible ......... 8

     (7)  Other Evidence Implicates Defendant ......................................................... 9

       i.   BitTorrent Use Stopped Exactly When Defendant Went On Vacation ...................... 9

       ii.  Defendant Has Not and Will Not Produce a Computer For Examination ................. 10

   G.  Defendant Has No Evidence To Support Any of His Affirmative Defenses ..................... 11

V.    ARGUMENT ............................................................................................. 11

  A.  Plaintiff Is Entitled To Summary Judgment For Direct Copyright Infringement And On
      Defendant's First And Second Affirmative Defenses ........................................ 11

      1.  Defendant's Recently Concocted "My Neighbor Did It" Defense Is Based On
          Inadmissible Speculation ...................................................................... 11

      2.  No One Visited Defendant With Sufficient Frequency To Be The Infringer ......... 13

          a.  Defendant's Wife And Young Children Are Not The Infringer ..................... 13

          b.  There is No Evidence To Support a Finding That a Neighbor or Lurker
              Committed the Infringement ............................................................. 13

          c.  Logical Conclusion ........................................................................ 13

          d.  Plaintiff Is Entitled To An Adverse Inference ....................................... 14

  B.  Summary Judgment Should Be Granted As To Defendant's Affirmative Defenses ......... 15

      1.  Defendant's Third Affirmative Defense: Lack Of Volitional Act ...................... 15

      2.  Defendant's Fourth Affirmative Defense: Failure To Include Indispensable Party 15

      3.  Defendant's Fifth, Sixth, and Seventh Affirmative Defenses: Unclean Hands And
          Misuse Of Copyright ........................................................................ 16

      4.  Defendant's Eighth Affirmative Defense: De Minimis Non Curat Lex And
          Thirteenth Affirmative Defense: Alleged Download Never Completed ............... 16

      5.  Defendant's Tenth Affirmative Defense: Waiver ...................................... 17

      6.  Defendant's Twelfth Affirmative Defense: Authorized Use ............................ 17

      7.  Defendant's Fourteenth Affirmative Defense: Innocent Infringement ............... 17

      8.  Defendant's Fifteenth Affirmative Defense: One Satisfaction Rule ................... 18

      9.  Defendant's Sixteenth Affirmative Defense: Unconstitutionally Excessive
          Damages ....................................................................................... 18

      10. Defendant's Seventeenth Affirmative Defense: Failure To Mitigate ................... 19

      11. Defendant's Eighteenth Affirmative Defense: Collective Work ......................... 19

VI.   CONCLUSION ........................................................................................ 20

## I.    <u>INTRODUCTION</u>

The infringement *definitely* occurred.   Defendant is the *only* possible infringer. Specifically, Plaintiff proves: (1) Defendant's IP address was recorded infringing Plaintiff's copyrights; (2) Comcast is "certain" it assigned Defendant the IP address; (3) Defendant's wife does not have the know-how to be the Infringer; (4) Defendant's two daughters were only one and two years old and could not be the Infringer; (5) no invited guests had sufficient access to Defendant's internet to be the infringer; and (6) there is no non-speculative evidence that a neighbor or lurker used Defendant's Internet.   If the speculative defense is considered, no rational jury could find in Defendant's favor because the evidence establishes: (a) Defendant regularly downloads and distributes content via BitTorrent; (b) Defendant uses an uncommon BitTorrent software program called "Transmission;" (c) Transmission was used to infringe Plaintiff's works; and (d) a tenured University of Miami professor and expert, relying on survey evidence from major universities, calculated the probability of both Defendant and a neighbor using BitTorrent and the software program Transmission as 1 in 37,679.   Moreover, the additional evidence of third party BitTorrent infringement directly correlates to Defendant; Defendant refuses to allow Plaintiff to examine his personal computer; and Defendant's testimony and denial are otherwise incredible.

In short, the evidence proves the infringement occurred and Defendant is the Infringer. Therefore, summary judgment should be entered in Plaintiff's favor.

## II.    <u>LEGAL STANDARD</u>

Summary judgment is proper when, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is "material" <u>only</u> if it may affect the outcome of the suit under the governing law.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  There is no genuine issue of material fact if the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that need to be decided at trial. *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  Evidence that is "merely colorable, or is not significantly probative" of a disputed fact cannot satisfy the non-moving party's burden, and a "mere scintilla" of evidence is likewise insufficient.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).  If a non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but <u>required</u>.  *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).  "[M]ere denials or allegations by the respondent [do not] suffice to create issues of material fact to preclude summary judgment."  *Sanders v. Nunley*, 634 F. Supp. 474, 476 (N.D. Ga. 1985).  Likewise, "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."  *Giles v. Winn-Dixie Montgomery, LLC*, 574 F. App'x 892, 894 (11th Cir. 2014).  As explained below, Defendant's theory of the case is premised entirely on inadmissible speculation.

Like this Court should, other courts hold a defendant's "conclusory statements and allegations in support of his theory that he was not the one using the IP address . . . [fail] to set forth competent summary judgment evidence that raised a genuine issue of material fact regarding his theory."  *Sony Pictures Home Entm't, Inc. v. Lott*, 471 F. Supp. 2d 716, 721 (N.D. Tex. 2007).  *See also Maverick Recording Co. v. Harper* 598 F.3d 193, 196 (5th Cir. 2010) ("[Defendant] submitted no evidence [except naked denials] that calls into question Plaintiff's[ ] showing that she had downloaded the audio files."); *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460 (W.D. Pa. 2010) (granting summary judgment); *Capitol Records, Inc. v. Koyate*, 2008 WL 2857237 (N.D. Ind. 2008) (same).

### III.   <u>MATERIAL FACTUAL QUESTIONS</u>

At any trial, Plaintiff would, if permitted, submit the following interrogatory to a jury pursuant to Fed. R. Civ. P. 49.

Did Plaintiff prove by a preponderance of the evidence that:

(**a**) Plaintiff owns the copyrights to the Works set forth on Exhibit A to the Amended Complaint.  Yes or No?

(**b**) Plaintiff did not authorize Defendant to use BitTorrent to download and distribute the Works.  Yes or No?

2

(**c**) IP address 98.249.146.169 was used to distribute copies of the Works via the BitTorrent protocol.  Yes or No?

(**d**) Comcast assigned IP address 98.249.146.169 to Defendant.  Yes or No?

(**e**) No one heard, saw, smelled, tasted or touched a neighbor or lurker use BitTorrent via Defendant's Internet.  Yes or No?

(**f**) It is more probable that Defendant, as opposed to a neighbor or lurker, used BitTorrent and the Transmission BitTorrent client to infringe Plaintiff's copyrights? Yes or No?[1]

(**g**) No one visited Defendant with sufficient frequency during the applicable time period to be the infringer.  Yes or No?

(**h**) Defendant is more likely than his wife to be the infringer.  Yes or No?

Based on the undisputed material facts, all rational triers of fact <u>must</u> answer "Yes" to each and every one these questions.  Any contrary conclusion is fatally illogical and could not survive a JNOV motion or appellate scrutiny.  *See* Fed. R. Civ. P. 49(b)(3) (when the verdict is inconsistent with special interrogatories, a court may "approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict; direct the jury to further consider its answers and verdict; or order a new trial.").  In other words, a verdict that is inconsistent with the answers to special interrogatories cannot stand.

As it relates to the instant Motion for Summary Judgment, this Court should expressly decide whether a rational juror could find, by a preponderance of the evidence, that Plaintiff did not prove any of the foregoing eight facts.  *See Martin v. Seal*, 510 F. App'x 309, 314 (5th Cir. 2013) (holding court committed reversible error by failing to consider material relevant facts in its summary judgment analysis).  Here, Plaintiff respectfully submits that no rational juror could find that Plaintiff failed to prove any of them.  Therefore, summary judgment is warranted.

**IV.**    <u>**FACTS**</u>

**A.**    <u>**Plaintiff Owns The Valid Copyrights-In-Suit**</u>

Plaintiff Malibu Media, LLC ("Plaintiff") is the registered owner of the copyrights set forth on Ex. B to the Amended Complaint [CM/ECF 8-2] (the "Copyrights-in-Suit").  *See*

---

[1] Plaintiff would likely only ask this question if the Court permits Defendant to raise or argue a speculative neighbor or lurker defense.

3

Statement of Material Facts at 2.[2]  The Copyrights-in-Suit cover movies (the "Infringed Works") originally authored by Plaintiff and published by Plaintiff on its subscription-based website, X-Art.com.  *Id.* at 3.  The Copyrights-in-Suit are valid.  *Id.* at 4.

### B.    The BitTorrent Files Are Copies of the Infringed Works

The files containing the cryptographic hash values set forth in Plaintiff's Amended Complaint at CM/ECF 8-1 are identical to, strikingly similar to or substantially similar to the Infringed Works.  *Id.* at 5.

### C.    Comcast Is Certain the Infringing IP Address Was Assigned to Defendant

Defendant's Internet Service Provider, Comcast, is "certain" Defendant was the subscriber whose equipment was assigned the "unique" IP address 98.249.146.169 ("Defendant's IP Address") when the infringement was occurring.  *Id* at 6.

### D.    Comcast's Correlation and Excipio's Business and Computer Records Prove The Infringer Used Defendant's Internet

Excipio established a TCP/IP internet connection with a person (the "Infringer") using Defendant's IP Address.  *Id.* at 7.   The Infringer entered into 203 computer transactions with Excipio (each an "Infringing Transaction," collectively the "Infringing Transactions.").  *Id.* at 8. As fully set forth on a printout thereof, Excipio logged each Infringing Transaction in a MySQL computer server log file.  *Id.* at 9.  The 203 Infringing Transactions all occurred between 7 PM and 7 AM EST, between and including March 15, 2014 and June 8, 2014 (the "Period of Recorded Infringement") on the following dates (1) 3/15/14; (2) 4/26/14; (3) 4/27/14; (4) 4/28/14; (5) 4/29/14; (6) 4/30/14; (7) 5/1/14; (8) 5/2/14; (9) 5/3/14; and (10) 6/7/14. *Id.* at 10.   During each Infringing Transaction, the Infringer sent a "bit" (also known as a "piece") of a media file, via the Internet, to Excipio.  *Id.* at 11.  Each one of 203 bits correlates via a unique cryptographic hash value to a piece of a copy of one of the Infringed Works.  *Id.* at 12.  Each entry on the MySQL log file correlates to a packet capture computer file known as a "PCAP."  *Id.* at 13.  Each PCAP is a recording of the entire network transmission between Excipio and the Infringer related to the infringing bit that was transferred from the Infringer to Excipio.  In other words, each PCAP is a recording of all of the zeros and ones exchanged between the Infringer and Excipio immediately before and after the transmission from the

---

[2] All of the citations to the record are set forth in the Statement of Undisputed Material Facts.

Infringer to Excipio of the bit transmitted via BitTorrent that correlates to one of Plaintiff's movies. *Id.* at 14  Indeed, even Defendant's putative expert, Tom Parker, testified that each of the PCAPs produced by Plaintiff that he was asked to examine contains a bit which correlates to one of the Infringed Works. *Id.* at 15.  The infringement detection system used by Excipio to record the IP addresses of infringers was tested by Mr. Patrick Paige, a computer forensics expert, who concluded that it works. *Id.* at 19.

### E.      The Infringement Occurred Using BitTorrent and "Transmission" Software; Defendant Admits to Using BitTorrent and the "Transmission" Software

To use BitTorrent, the Infringer needed specialized BitTorrent software, generally referred to as a "BitTorrent client." *Id.* at 20.  Here, the Infringer used a BitTorrent client called "Transmission" to infringe all the Infringed Works. *Id.* at 21.  Defendant admits to regularly using BitTorrent. *Id.* at 22.  Defendant also admits to using the "Transmission" BitTorrent client. *Id.* at 23.[3]

### F.      No Reasonable Juror Could Find Defendant Is Not The Infringer

Since the infringement definitely occurred using Defendant's Internet, the universe of people who may be the Infringer are limited to Defendant, a resident in his home, an invited guest using Defendant's Internet, or a neighbor or lurker using Defendant's Internet.  The Period of Recorded Infringement lasted two months and three weeks. *Id.* at 25.

### (1)      No Rational Juror Could Conclude Anyone Who Lived In Defendant's Home Other Than Defendant Is the Infringer

Defendant only lived with his wife and two daughters during the Period of Recorded Infringement. *Id.* at 26.  Defendant's daughters were one and two years old during the Period of Recorded Infringement; they do not know how to use a computer. *Id.* at 27.  Defendant's wife does not know what BitTorrent is and does not have the know-how to be the Infringer. *Id.* at 28.

### (2)      No Rational Juror Could Conclude An Out of Town Guest Is The Infringer

Neither Defendant nor his wife could identify any specific person who definitely stayed

---

[3] Defendant's Attorney has correctly represented in other cases that the far-and-away most used BitTorrent client is "μTorrent"; "Transmission" does not even make the list of the top 10 most popular alternatives. *See* Defendant's Attorney's Memorandum at p. 10 CM/ECF 54, Case No. 8:13-cv-03007 (M.D. Fla. Feb. 23, 2015) (citing Ben Jones, *Top Ten UTorrent Alternatives*, TorrentFreak).

over-night during the Period of Recorded Infringement.  *Id.* at 29.  From the middle of 2013 to the end of 2014, which is longer than (but overlaps) the Period of Recorded Infringement, Defendant's in-laws were the only visitors to stay for longer than a week.  *Id.* at 30.  Defendant's in-laws do not own a computer and they did not bring their shared tablet to Defendant's home between June 2013 and December 2014.  *Id.* at 31.  Defendant's father-in-law and mother-in-law only stayed separately at Defendant's home for about three weeks and one month, respectively. *Id.* at 32.  Just one month prior to the beginning of the Period of Recorded Infringement, Defendant and his family visited his in-laws in Argentina for nearly two months.  *Id.* at 33. Logically, this evidence proves that there is no overnight guest who could have committed all of the Infringements that occurred over a period of two months and three weeks.

### (3)      No Rational Juror Could Conclude A Local Guest Could Be The Infringer

Defendant and his wife identified Defendant's parents, who live in Miami-Dade County, and one of Defendant's wife's friends, who resides in Broward County, as the only local visitors to their home between the middle of 2013 to the end of 2014.  *Id.* at 35.  Neither Defendant's parents nor the Broward County guest ever brought a computer to Defendant's home.  *Id*. at 36. Nor did any one of them stay overnight each day on which infringement occurred.  *Id*. at 37.

### (4)      No Rational Juror Could Conclude A Neighbor Or Lurker Is The Infringer Because The Probability Is 1 In 37,679

Neither Defendant nor his wife saw, heard, or otherwise sensed anyone outside Defendant's home use Defendant's internet service.  *Id*. at 38.  Neither Defendant nor his wife saw a person camped out around Defendant's home.  *Id*. at 39.  Defendant did not perform any investigation about the infringement during the period of discovery and did not ask any of his neighbors whether they ever used his internet connection.   *Id.* at 48.

Based upon survey evidence from two universities establishing that, at most, 14% of the American population uses BitTorrent to download movies or TV shows and 3.68% of that population uses the BitTorrent client Transmission, Dr. Daniel Sarel, a marketing professor and statistics expert at the University of Miami, calculated the probability of two Americans living next to each other that both use BitTorrent and the BitTorrent client "Transmission" **as one in thirty seven thousand, six hundred and seventy nine (1 out of 37,679).**  *Id.* at ¶ 44-45.  That is the probability that one of Defendant's neighbors used BitTorrent and like Defendant also used Transmission.  Based on this alone, Plaintiff respectfully suggests no rational juror could believe

Defendant's recently concocted "a neighbor did it" defense.  However, there is more evidence as set forth below.

According to Defendant's expert, the Infringer was likely "a technical person … [a] techy over [a] lay person."  *Id*. at 46.  Defendant is a "software architect and engineer for building a cloud system for IoT—internet of things—type devices."  Def. Depo, at 24:5–11.  For over ten years he has worked for various companies as a software developer, Java developer, senior Java developer, software engineer, senior software engineer, development manager, software architect, and chief cloud architect.  *Id*. at 47.  Defendant is certainly a "techy" person.

### (5)  The Additional Evidence Points To Defendant Being The Infringer

#### i.  Defendant Is A Serial BitTorrent User

Between July 27, 2013 and December 8, 2014 (the "Period of Additional Evidence") Excipio logged Defendant's IP address as being a peer in 315 swarms associated with the downloading and distribution of 315 different media files.  *Id.* at 49.  Between July 2013 and February 2014, when *only* Defendant and his family had consistent access to his password-protected internet, Excipio logged Defendant's Internet being associated with 176 of these files.  *Id*. at 50.  After the time Defendant testified he took the password off his WiFi router, Excipio logged Defendant's Internet being associated with 139 of these media files.  *Id.* at 51.  Defendant also testified he secured his Internet with a password in response to receiving notice of this lawsuit in October or early November 2014.  *Id.* at 52.  Despite being password protected, Defendant's internet connection *continued* to be associated with swarms for third-party works until December 8, 2014—the exact date on which Plaintiff amended its Complaint to proceed against Defendant.  *Id.* at 53.  In short, the Additional Evidence establishes that Defendant is a serial infringer.  Indeed, infringement was occurring when only he and his family had access to his password-protected WiFi router.

#### ii.  The Probability Of Two Serial BitTorrent Users Living Next To Each Other is 1 In 10,000

Relying on survey results from the American Assembly—a public policy institute of Columbia University that found "that only 1% of Americans are heavy pirates of TV/movie content (i.e., possess more than 100 movies or TV shows and copied or downloaded most or all of them)"—Dr. Daniel Sarel opines "[a]ssuming a heavy pirate has only one next door neighbor,

the probability that a heavy pirate living in the U.S. also lives next to another heavy pirate is one out of ten thousand (1 out of 10,000)." *Id.* at 54.   Unless one speculates that a neighbor somehow hacked Defendant's WiFi router, then, statistically, no rational juror could find anything but that Defendant is the only serial BitTorrent infringer in his immediate vicinity.

### (6)   Some of Defendant's Material Testimony Has Been Too Fortuitous To Be Credible And Some Is Provably False

#### i.   Defendant's Password Story Is Too Fortuitous To Be Credible

Defendant testified that his WiFi router was password protected from 2007 until "February or March of 2014." *Id.* at 40.  After being consistently password protected since 2007, Defendant testified he removed the password from his WiFi router in "February or March of 2014." *Id.* at 55.  This was, at most, one month prior to the first recorded infringement in March of 2014.  *Id.*  Defendant's neighbor testified that he remembers seeing many secured WiFi wireless networks but does not remember ever seeing any that were unsecured.  *Id.* at 43. Defendant has an obvious motive to lie.  His testimony is too fortuitous to be credible.  The unbiased neighbor testified truthfully.

#### ii.   Defendant Provided False Testimony About Copyright Warning Notices

On October 3, 2011, Comcast sent Defendant a copyright infringement warning for allegedly using BitTorrent to download **REDACTED**.  *Id.* at 56.   **REDACTED** is one of Defendant's favorite musicians.  *Id.* Twice on November 23, 2012 and on December 16, 2012, Comcast sent Defendant a copyright infringement warning for allegedly using BitTorrent to download a movie or movies about the character **REDACTED**.  *Id.* at 57.  Plaintiff recorded Defendant download another **REDACTED** film contemporaneously with Plaintiff's works.  *Id.* at 58.  Defendant did not disclose the copyright infringement warning notices in discovery and testified, under oath, that he checked the email to which Comcast sent these notices.  *Id.* at 59. Plaintiff respectfully suggests the omission, which benefitted Defendant, was intentional and material.

#### iii.   Defendant's Testimony About The Scope Of His BitTorrent Use Is Incredible

Defendant denies ever using BitTorrent to download movies or TV shows.  However, his IP address was broadcast as being a peer in swarms downloading and distributing the following

movies and TV shows, among others: Guardians of the Galaxy, The Grand Budapest Hotel, Oblivion, Mortal Instruments: City of Bones, Star Trek the Next Generation, Modern Family, and Game of Thrones.  Defendant admits to liking or having watched all of these movies and TV shows.  *Id*. at 60.  Relatively obscure books and music with which Defendant is familiar were also downloaded—*e.g.*, "Ender's Game" and "Tales of Alvin Maker" by Orson Scott Card, "Naked Lunch" by William Burroughs, and the musicians Hank Williams, Temple of the Dog, and La Oreja de Van Gogh.  *See id.* at 61.  Defendant's interests in digital photography, video games, and pornography also match Plaintiff's Additional Evidence.  *Id.*

Between February or March of 2014 and October or November of 2014, when Defendant testified his internet connection was <u>not</u> password protected, Excipio logged Defendant's IP Address being associated with BitTorrent swarms downloading and distributing classical music, including Beethoven and Mozart.  *Id.* at 62.  Defendant publicly "liked" Beethoven on his YouTube page. *Id*. at 63.[4]

Throughout the Period of Additional Evidence, Defendant's IP Address was also associated with BitTorrent swarms associated with young children's movies and shows, some of which are in Spanish (*e.g.*, Como Entrenar a Tu Dragon) and several of which Defendant or his wife admit that they or their two young daughters have seen – *e.g.*, Kung Fu Panda, Tangled, Mickey's Christmas Carol, Winnie the Pooh.  *Id.* at 64.  Defendant, his wife, and his children speak Spanish.  *Id.* at 65.  The other children in Defendant's neighborhood are much older than Defendant's daughters and Defendant's wife is not aware of any of them speaking Spanish.  *Id.* at 66.   The closest children to Defendant's home were a three to five minute walk from Defendant's home.  *Id*. at 67.

All of the evidence cited in this Motion, including what is discussed in this section, proves Defendant is not being truthful about the extent of his BitTorrent use.

    **(7)**    <u>Other Evidence Implicates Defendant</u>

        **i.**    <u>BitTorrent Use Stopped Exactly When Defendant Went On Vacation</u>

Defendant was in Argentina between December 2013 and February 2014, and no one was in his home during this time.  *Id*. at 68.   Prior to Defendant's departure, his IP Address was

---

[4]  Someone removed the link to Beethoven from Defendant's YouTube page during this litigation, but incredibly Defendant testifies that he does not recall doing so.  *See id.*

broadcast as being a peer in BitTorrent swarms downloading and distributing third-party works every single month. *Id*. The BitTorrent activity emanating from Defendant's IP address ceased on December 9, 2013, on or about the time that Defendant left for Argentina, and it did not resume until Defendant returned home on or about February 17, 2014. *Id*. at 69. The <u>only</u> month during which Defendant's internet was not broadcast as being a peer in BitTorrent swarms downloading and distributing third-party works was the month that Defendant was out of the country. *Id*. at 70.

        **ii.**     **<u>Defendant Has Not and Will Not Produce a Computer For Examination</u>**

In mid-November 2014, shortly **after** being notified of this lawsuit, Defendant returned to his former employer the only computer he identified in discovery as being in his possession between May 2012 and May 2015.[5] *Id.* at 71. Throughout the litigation and despite being within the scope of discovery requests, Defendant did not identify or produce records from a personal laptop that he possessed throughout the Period of Recorded Infringement and Period of Additional Evidence, and which he still possesses today. *Id.* at 72. Prior to identifying this laptop, Defendant testified that a much older Dell computer was his "last non-work personal computer." *Id.* at 73. Defendant's wife testified that Defendant's family's personal laptop was last used in August of 2013 but was no longer in the home since Defendant "took care of it." *Id.* at 74. Defendant, in turn, testified that his family's personal laptop is still in his home on a shelf in a closet. *Id.* at 75. Defendant testified that he did not disclose his family's personal laptop because he "checked the computer for the system log and the last log-in date was like sometime mid 2013, early 2013 so I didn't check anything on it because it wasn't on during any of the times in question." *Id.* at 76. However, Defendant expressly refused, under oath, to allow Plaintiff to verify this testimony. *Id.* at 78. Further, Defendant admitted to never searching his personal laptop for evidence within the scope of a document request propounded on him. *Id.* at 77. Defendant is intentionally suppressing relevant and material evidence.

---

[5] Based on Defendant's paper discovery, Plaintiff was initially led to believe that this computer had been transferred much earlier, in August of 2014. In any case, it is noteworthy that Defendant retained and did not return the other computer devices he borrowed from his former employer. *Id.*

### G.     Defendant Has No Evidence To Support Any of His Affirmative Defenses

Plaintiff has never distributed its works through the BitTorrent protocol, nor has it consented to or acquiesced in any person's (other than its investigator) downloading or distributing of its works via BitTorrent. *Id.* at 79. Plaintiff has not surrendered any rights to any of its works, and Plaintiff's website states that *all* of its works are copyrighted. *Id.* at 80. Prior to this lawsuit, Plaintiff and Defendant were complete and total strangers; Defendant "had no idea who [Plaintiff] was." *Id.* at 81. Defendant has no evidence or reason to believe that some but not all parts of the Infringed Works were downloaded using Defendant's wireless internet. *Id.* at 82. When asked whether Plaintiff should be suing someone else instead of or in addition to Defendant, Defendant testified: "I don't know." *Id.* at 83. When asked whether he believed that Plaintiff had misused its copyright in any way whatsoever, Defendant testified: "I don't know." *Id.* at 84. When asked whether he believed that Plaintiff had engaged in any wrongdoing whatsoever in connection with the at-issue copyright infringement or this litigation, Defendant testified: "I don't know anything about that." *Id.* at 85. When asked whether he believed that Plaintiff had failed to mitigate its damages or should have done more to prevent the theft of its work, Defendant testified: "I'm not aware of any [failure to mitigate]." *Id.* at 86. When asked whether Defendant was aware of any facts or information that might support the argument that the Infringed Works should really just be considered as one work for purposes of copyright, Defendant testified: "I don't know…. I'm not aware . . . ." *Id.* at 87.

### V.    ARGUMENT

### A.    Plaintiff Is Entitled To Summary Judgment For Direct Copyright Infringement And On Defendant's First And Second Affirmative Defenses

"To establish copyright infringement, [all that one must prove is] ownership of [a] valid copyright and [unauthorized] copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Services, Co., Inc.*, 111 S.Ct. 1282, 1296 (1991). Plaintiff did not authorize Defendant to use BitTorrent to download and distribute its copyrighted works, and Defendant voluntarily withdrew his affirmative defenses based on license, consent, and acquiescence. *See* Stat. Mat. Facts at 79–88.

1.   Defendant's Recently Concocted "My Neighbor Did It" Defense Is Based On Inadmissible Speculation

11

Federal Rule of Evidence 602, entitled "Need for Personal Knowledge," states that "[a] witness may testify to a matter *only if* evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  To have personal knowledge of a fact, the witness must have perceived the fact by one of the five human senses—he must have either *seen* the fact, *heard* the fact, *tasted* the fact, *smelled* the fact, or *touched* the fact.  *Cf. id.*, advisory committee notes ("A witness … must have had an opportunity to observe, and must have actually observed the fact.").  Consequently, a lay witness is precluded from providing an assumption or inference absent personal knowledge and direct perception.  *See* Fed. R. Evid. 701(a) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the witness's perception.").  The rules recognize that lay testimony not based on personal knowledge is useless and inadmissible; "[a] lay witness's testimony is limited to those opinions or inferences which are rationally based on the perception of the witness….  A lay witness's opinion is admissible only if it is based on first-hand knowledge or observation."  *U.S. v. Cha*, 431 Fed.Appx. 790, 793 (11th Cir. 2011).  Significantly, these rules are particularly inflexible where the testimony or opinion concerns a core defense to liability. *Accord U.S. v. Allen*, 10 F.3d 405, 414 (7th Cir. 1993) ("The closer the subject of the opinion gets to critical issues the likelier the judge is to require the witness to be more concrete because the jury is not sufficiently helped in resolving disputes by testimony which merely tells it what result to reach.").

Here, to escape liability Defendant must necessarily assert that some unknown neighbor or lurker used his Internet to commit the infringement.  Yet, Defendant does not provide a single piece of evidence to support this assertion.  Defendant's argument that someone outside his house committed the infringement does not even qualify as a "scintilla" of evidence and requires impermissible speculation in violation of Fed. R. Evid. 602 and 701(a).  Indeed, Defendant did not perform any investigation about the infringement in this case.  *See* Undisp. Mat. Fact at 38–39, 48.  He did not ask any of his neighbors whether they used his internet connection, no one ever saw anyone camped outside Defendant's home, and no one sensed any third parties using Defendant's Internet.  *Id.*  Defendant's putative expert did not perform any investigation to ascertain whether any of Defendant's neighbors would have been physically in range of Defendant's wireless internet signal, has no evidence of anyone other than Defendant using Defendant's Internet, and, and has no evidence to believe that Defendant's internet was ever <u>not</u>

password protected.  In fact, the only third party evidence either party has been able to discover indicates that no one outside of Defendant's home could have infringed; Defendant's neighbor specifically recalls seeing WiFi signals that were password protected, but does not recall ever seeing any that were unsecured.  *See id.* at 43.  Defendant cannot identify a *single* person outside his home who regularly used his internet connection.  Defendant, his wife, and Defendant's *own expert* admit there is absolutely no evidence that a third party used Defendant's Internet to infringe copyrights.

2.   No One Visited Defendant With Sufficient Frequency To Be The Infringer

As stated above, the infringement occurred over a two month and three week period of time between 7 PM and 7 AM.  As the evidence makes clear, no local or out of town guest visited Defendant with sufficient frequency to be the Infringer.

a.   Defendant's Wife And Young Children Are Not The Infringer

As the facts make clear, Defendant's wife does not have the know-how to commit the infringement and Defendant's children are too young to be the Infringer.

b.   There is No Evidence To Support a Finding That a Neighbor or Lurker Committed the Infringement

The neighbor or lurker defense is speculative and therefore should not be considered. Even if considered, the probability of such a person existing is so remote that no rational juror could find for Defendant on this basis. *See Miles v. Jones*, No. 08-20612-civ, 2010 WL 5574324, *7 (S.D. Fla. Nov. 22, 2010) ("Although the Court is required to draw all *reasonable* inference in favor of the party opposing summary judgment, those inferences must be based on *facts* in the record.  The Court is not required, *or even permitted*, to deny a summary judgment motion based on *unreasonable* inferences that amount to nothing more than speculation or conjecture").

c.   Logical Conclusion

The foregoing evidence conclusively establishes (1) the infringement definitely occurred and (2) Defendant is the only possible infringer.  Logic, therefore, compels the conclusion Defendant infringed.  "The language of judicial decision is mainly the language of logic," said esteemed Supreme Court Justice Oliver Wendell Holmes, Jr.  The facts here create a paradigmatic syllogism.  It is axiomatic that if something *must* be true it *is* true.

d.   Plaintiff Is Entitled To An Adverse Inference

Defendant's decision to refuse to permit the examination of his computer which constitutes potentially exculpatory evidence warrants application of an adverse inference. "The 'adverse inference' rule provides that 'when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.'" *Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986) (quoting *International Union (UAW) v. NLRB,* 459 F.2d 1329, 1336 (D.C.Cir.1972) (overturning Board's refusal to draw an adverse inference from suppression of records)). *See also Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectos, S.A.*, 728 F.2d 572, 575 (1st Cir. 1984) ("The district court was entitled, as are we, to draw an adverse inference against the defendant for its failure to produce"); *N.L.R.B. v. Int'l Medication Sys., Ltd.*, 640 F.2d 1110, 1115 (9th Cir. 1981) (same); *In re Bailey*, 451 B.R. 640, 645 (S.D. Ga. 2011) ("This Court draws an adverse inference from Defendants' concealment and assumes that truthful answers to those questions and production of documents would have been unfavorable to Defendants"); *Robinson v. Union Cent. Life Ins. Co.*, 144 F. 1005, 1010 (C.C.N.D. Ga. 1906) ("The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause."). This rule is applicable even in the absence of a subpoena compelling production:

> First, it is important to realize that the applicability of the rule in no way depends on the existence of a subpoena compelling production of the evidence in question. The theory behind the rule is that, all other things being equal, a party will of his own volition introduce the strongest evidence available to prove his case. If evidence within the party's control would in fact strengthen his case, he can be expected to introduce it even if it is not subpoenaed.

*International Union (UAW)*, 459 F.2d at 1338 (emphasis added).

While not necessary in light of the logical syllogism discussed above, the adverse inference, which equitably must be drawn from Defendant's refusal to produce his laptop, further reinforces the conclusion that no reasonable juror could find for Defendant. *See e.g. S.E.C. v. Scherm*, 854 F. Supp. 900, 905 (N.D. Ga. 1993) (granting plaintiff's motion for summary judgment where adverse inference combined with a sworn statement, sworn affidavit, and other evidence had been presented). Defendant will not be able overcome the adverse inference because the Best Evidence Rule prohibits him from testifying, directly or indirectly, about the

14

contents or his use of his suppressed personal laptop.  The issues surrounding the Best Evidence Rule will be thoroughly addressed in a motion *in limine*.  Suffice it to say, for now, that information stored on a computer is a "recording" within the meaning of the Best Evidence Rule, and that that Rule requires that the contents and use of Defendant's personal laptop be proved, if at all, only by introduction of the laptop itself. *See* Fed. R. Evid. 1002, 1004.

**B.** **Summary Judgment Should Be Granted As To Defendant's Affirmative Defenses[6]**

1.   Defendant's Third Affirmative Defense: Lack Of Volitional Act

Defendant's "bare-bones" defense only states in conclusory fashion that Plaintiff's claim should be barred because Defendant did not engage in any "volitional act."  CM/ECF 15 at p. 4. This defense fails on its face, and summary judgment should be entered.  Indeed, this is not a true affirmative defense because "[t]he Copyright Act is a strict liability regime under which any infringer, whether innocent or intentional, is liable."  *Dellacasa, LLC v. John Moriarty & Assocs.*, No. 07-21659-CIV, 2007 WL 4117261, *3 n.2 (S.D. Fla. Nov. 16, 2007).  Accordingly, Defendant's mental state or volition is irrelevant. *See id.*; *see also Kohus v. Graco Children's Products, Inc.*, 13 F. Supp. 3d 829, 838 (S.D. Ohio 2014) ("Liability for copyright infringement does not turn on the infringer's mental state because a general claim for copyright infringement is fundamentally one founded on strict liability"); *Sony BMG Music Enter. v. Willis*, No. 1:07-cv-156, 2008 WL 2120837, *3 (S.D. Ohio May 19, 2008) ("Plaintiffs need not demonstrate Defendant's intent to infringe, or even knowledge of infringement, in order to prove copyright infringement.").

2.   Defendant's Fourth Affirmative Defense: Failure To Include Indispensable Party

Defendant's Fourth Affirmative Defense asserts "Plaintiff failed to include as a Defendant the individual who uploaded the alleged file(s) to the Internet."  CM/ECF 15 at p. 5. This argument is undermined by Defendant's testimony that he does not know if anyone else should have been named in this lawsuit.  *See* Undisp. Mat. Facts at 83.  Regardless, Defendant's argument has been repeatedly rejected.   "[D]efendant's representation that other alleged infringers have not, and must, be joined in this lawsuit is debunked by well-settled interpretations

---

[6] Defendant has agreed to voluntarily withdraw his Ninth affirmative defense (safe harbor) and his Eleventh affirmative defense (license, consent, and acquiescence).  *See* Stat. Mat. Facts at 88.

of Rule 19(a)." *Malibu Media, LLC v. Batz*, No. 12-cv-01953, 2013 WL 2120412, *4 (D. Colo. 2013) (striking affirmative defense of failure to join indispensable party); *Malibu Media, LLC v. Doe*, No. 12-2078, 2013 WL 30648, *9 (E.D. Pa. Jan. 3, 2013) ("[E]ven if the other members of the swarms involved in the Does' downloading activities were considered to be joint tortfeasors, the law is clear that joint tortfeasors are permissive parties under Fed. R. Civ. P. 20 but not necessary or indispensable parties under Fed. R. Civ. P. 19(a) and (b).  This is a well-settled doctrine that has been acknowledged by the Supreme Court" (citing *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7 (1990)).

3.    <u>Defendant's Fifth, Sixth, and Seventh Affirmative Defenses: Unclean Hands And Misuse Of Copyright</u>

"For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements.  First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted.  Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct."  *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993).  And, the defense "must be pled with the specific elements required to establish the defense." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644, 2010 WL 3522409, *3 (D. Colo. Aug. 10, 2010).   Here, the undisputed facts speak for themselves; Plaintiff has not committed any transgression against Defendant, and Defendant has not and cannot proffer any evidence to the contrary:  :

> Q: Do you believe that my client has misused its copyrights in any way?
>
> A: I don't know.
>
> Q: I'm casting a wide net, in the broadest [sense], any wrongdoing at all?
>
> A: I don't know anything about that business.

Def. Depo at 104:6–12, 105:12–25.

4.    <u>Defendant's Eighth Affirmative Defense: De Minimis Non Curat Lex And Thirteenth Affirmative Defense: Alleged Download Never Completed</u>

To the extent Defendant argues that copying pieces of a work via BitTorrent does not constitute copyright infringement, Defendant's argument fails as a matter of law and fact.  First, courts recognize that copying a piece of a copyrighted work constitutes infringement.  *See, e.g.*,

16

*Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 683 F.2d 610, 624 (2d Cir. 1982) ("copyright infringement may occur by reason of a substantial similarity that involves only a small portion"); *Patrick Collins, Inc. v. Doe*, 945 F. Supp.2d 367, 376–77 (E.D.N.Y. 2013) ("A defendant may infringe on the plaintiff's work through literal copying of only a portion of it.").  Second, Plaintiff's investigators recorded Defendant's IP address distribute 203 pieces of Plaintiff's movies over a substantial length of time.  The purpose of BitTorrent is to get the complete file. And, here, since Defendant kept using BitTorrent repeatedly, there is simply no doubt that *all of* Plaintiff's 17 works were downloaded.[7]

### 5.    Defendant's Tenth Affirmative Defense: Waiver

"Abandonment can only be shown by proving the copyright proprietor intended to surrender the rights in a work."  *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 898 (5th Cir. 1972).  *See also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) ("In copyright, waiver or abandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'").  Here, Defendant has no evidence that Plaintiff waived or abandoned its copyrights, and Plaintiff has taken no action that would indicate a waiver or abandonment.

### 6.    Defendant's Twelfth Affirmative Defense: Authorized Use

Defendant admits that he did not believe he had authorization to download Plaintiff's works.  Def. Depo at 89:7–90:11, and Defendant already withdrew his affirmative defense of license, consent, and acquiescence.  Stat. Mat. Facts at 88.

### 7.    Defendant's Fourteenth Affirmative Defense: Innocent Infringement

Defendant has proffered no evidence to support an innocent infringement defense, and this is not actually a true affirmative defense anyway—it is a limitation on damages.  "If an infringement is innocent, the floor for statutory damages is lowered." *Denenberg v. LED Technologies, LLC*, 2013 WL 2153290, at *2 (D. Colo. 2013); *see also Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1559 (M.D. Fla. 1993) ("Intent to infringe is not needed to find copyright infringement.").  Further, the Copyright Act provides that with regard to innocent

---

[7] *See Malibu Media, LLC v. Doe*, No. 13-C-0213, 2013 WL 5876192, *2 (E.D. Wis. Oct. 31, 2013) ("Someone who starts downloading a movie intends to watch the movie, and thus the person will likely download the full movie.  This means that there is a nonnegligible probability that a user who has a piece of a file constituting a movie on his computer also has the remaining pieces.").

infringement, "the court in its discretion *may* reduce the award of statutory damages to a sum of not less than $200."  17 U.S.C. § 504(c)(2) (emphasis added).   This potential reduction of damages is discretionary and it is *not* available where a copyright notice appears on an infringed work.  *See* 17 U.S.C. § 401(d) (if "a notice of copyright . . . appears on the published copy or copies to which a defendant in a copyright infringement suit had <u>access</u>, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement.…").   At least two Circuit Courts have held that § 402(d) applies to bar the innocent infringer defense as it relates to peer-to-peer file sharing when the defendant could have readily learned that the material was under copyright.  *See BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005); *Maverick Recording Co. v. Harper*, 598 F.3d 193, 199 (5th Cir. 2010).  Here, Plaintiff's website states *all* of its works are copyrighted, and eleven of the seventeen Infringed Works contain copyright notices.  Accordingly, the innocent infringer defense is unavailable to Defendant.

8.      Defendant's Fifteenth Affirmative Defense: One Satisfaction Rule

Again, Defendant acknowledges he has no facts to support this affirmative defense.  Def. Depo at 110:14–18.  Further, the "one satisfaction rule" is not an independent legally cognizable defense to copyright infringement. Indeed, an "argument that Plaintiff's alleged settlements with other defendants precludes recovery of statutory damages severely misreads the statute.  Because Plaintiff has not received any award for actual damages in this action, 17 U.S.C. § 504(c)(1) does not bar Plaintiff from pursuing its claim for statutory damages."  *Batz*, 2013 WL 2120412, at *2 *report and recommendation adopted*, 2013 WL 2115236 (D. Colo. May 15, 2013) (striking affirmative defense).

9.      Defendant's Sixteenth Affirmative Defense: Unconstitutionally Excessive Damages

Defendant's Sixteenth Affirmative Defense asserts that Plaintiff's claim for statutory damages is barred by the U.S. Constitution and the Fifth Amendment right to due process.  *See* CM/ECF 15 at p. 8–9.  Defendant is wrong.  Courts repeatedly and consistently reject due process challenges to the imposition of statutory damages under the Copyright Act—which provides for per-work damages between $750 and $150,000.  *See, e.g., Sony BMG Music Entertainment v. Tenenbaum*, 719 F.3d 67 (1st Cir. 2013) (upholding statutory damages of $675,000 over a due process challenge where the defendant was liable for illegally downloading

30 songs for his own non-commercial use).[8] *Malibu Media, LLC v. Fitzpatrick*, No. 1:L12-cv-22767, 2013 WL 5674711, *5 (S.D. Fla. 2013) (holding that "statutory damages need not necessarily be proportionate to actual damages because statutory damages also serve a deterrent function").

      10.    <u>Defendant's Seventeenth Affirmative Defense: Failure To Mitigate</u>

Defendant's Seventeenth Affirmative Defense erroneously asserts "Plaintiff has purposefully avoided taking sufficient steps to protect the copyrighted material." CM/ECF 15 at p. 9. This is false—Defendant admits that he has absolutely no evidence to support this claim and, in fact, Plaintiff sends thousands of DMCA notices per month. Undisp. Mat. Facts at 79–88 and Def. Depo at 106:3–6, 111:19–24. And, "the defense of failure to mitigate damages is generally inappropriate when [as here] a party seeks only statutory, as opposed to actual, damages." *Malibu Media, LLC v. Jason Sterling*, No. 8:13-cv-00472, CM/ECF 19 (M.D. Fla. July 17, 2013).

      11.    <u>Defendant's Eighteenth Affirmative Defense: Collective Work</u>

Defendant argues that all copyrighted works at issue in this case constitute "one 'compilation' or 'collective work' for purposes of damages" because the videos "are assembled into a collective whole in one work, www.xart.com, which is accessible to user members by one single subscription." CM/ECF 15 at p. 9. Not true. A compilation is "(1) a collection and assembling of preexisting materials, facts, or data (2) that are then selected, coordinated, or arranged (3) into a work that, by virtue of that selection, coordination, or arrangement, may be said to constitute, as a whole, an 'original work of authorship.'" 17 U.S.C.A. § 101. "'Arrangement' or 'coordination' refers to the ordering or grouping of data into lists or categories that go beyond the mere mechanical grouping of data as such, for example, the alphabetical, chronological, or sequential listings of data." 2 Patry on Copyright § 3:66. Here, none of the registrations cover the arrangement or coordination of a group of Plaintiff works, and

---

[8] In Tenenbaum, the court specifically rejected the argument that the statutory award "violate[d] due process because it [was] not tied to the actual injury that he caused. . . [.]" The court opined that this argument asked the court "to disregard the deterrent effect of statutory damages, the inherent difficulty in proving damages in a copyright suit, and [plaintiff's] evidence of the harm that it suffered from conduct such as Tenenbaum's." The court further noted that the Supreme Court had previously held that statutory damages are <u>not</u> to be measured this way. *See Tenenbaum*, 719 F.3d at 71 ("Nor does giving the penalty to the aggrieved [party] require that it be confined or proportioned to his loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state." (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66 (1919))).

each work is a stand-alone movie that was independently registered.  *See* Undisp. Stat. Facts at 3. Finally, Defendant admitted in his deposition that he has no facts supporting this affirmative defense.  *See id.* at 87.

## VI.    CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in Plaintiff's favor.


Respectfully submitted,


LIPSCOMB EISENBERG & BAKER, PL

By: /s/ *M. Keith Lipscomb*
**M. Keith Lipscomb, Esq.**
Florida Bar No. 429554
klipscomb@lebfirm.com
**Daniel C. Shatz, Esq.**
Florida Bar No. 94696
dshatz@lebfirm.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Daniel C. Shatz*