## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MALIBU MEDIA, LLC, | CASE NO. 0:14-cv-61957 |
| Plaintiff, | |
| v. | |
| ROBERT DARE, | |
| Defendant. | |

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

                                                    Respectfully submitted,

                                                    LIPSCOMB EISENBERG & BAKER, PL

                                                    By: /s/ *M. Keith Lipscomb*
                                                    **M. Keith Lipscomb, Esq.**
                                                    Florida Bar No. 429554
                                                    klipscomb@lebfirm.com
                                                    **Daniel C. Shatz, Esq.**
                                                     Florida Bar No. 94696
                                                    dshatz@lebfirm.com
                                                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

     I hereby certify that on October 28, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                                                          By: /s/ *Daniel C. Shatz*

# **TABLE OF CONTENTS**

A.   Jurisdiction and Venue Is Proper ........................................................................................... 1

B.   Plaintiff Owns The Valid Copyrights-In-Suit ........................................................................ 1

C.   The BitTorrent Files Are Copies of the Infringed Works ...................................................... 1

D.   Comcast Is Certain the Infringing IP Address Was Assigned to Defendant ......................... 1

E.   Comcast's Correlation and Excipio's Business and Computer Records Prove The Infringer Used Defendant's Internet ....................................................................................... 1

F.   Defendant Admits to Using BitTorrent and the "Transmission" Software ............................ 3

G.   No Reasonable Juror Could Find Defendant Is Not The Infringer ........................................ 3

   (1)   No Rational Juror Could Conclude Anyone Other Than Defendant Who Lived In His Home Is the Infringer ........................................................................................... 3

   (2)   No Rational Juror Could Conclude An Out of Town Guest Is The Infringer ............... 4

   (3)   No Rational Juror Could Conclude A Local Guest Could Be The Infringer ................ 4

   (4)   No Rational Juror Could Conclude A Neighbor Is the Infringer Because the Probability is 1 in 37,679 ............................................................................................... 5

   (5)   The Additional Evidence Points To Defendant Being the Infringer ............................. 6

      i.   Defendant is a Serial BitTorrent User ....................................................................... 6

      ii.  The Odds of Two Serial BitTorrent Users Living Next To Each Other is 1 in 10,000 ................ 6

   (6)   Some of Defendant's Material Testimony Has Been Too Fortuitous To Be Credible And Is Provably False ....................................................................................... 7

      i.   Defendant's Password Story is Too Fortuitous Too Be Credible .............................. 7

      ii.  Defendant Provided False Testimony About Copyright Warning Notices ............... 7

      iii. Defendant's Testimony About The Scope of His BitTorrent Use Is Incredible ........ 7

   (7)   Other Evidence Implicates Defendant ........................................................................... 9

      i.   BitTorrent Use Stopped Exactly When Defendant Went on Vacation ..................... 9

      ii.  Defendant Has Not and Will Not Produce a Computer For Examination ................ 9

H.   Defendant Has No Evidence to Support any of His Affirmative Defenses ......................... 10

A.   **Jurisdiction and Venue Is Proper**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper because Defendant Robert Dare ("Defendant") resides in this District.

B.   **Plaintiff Owns The Valid Copyrights-In-Suit**

2. Plaintiff, Malibu Media, LLC ("Plaintiff") is the registered owner of the copyrights set forth on Ex. B to the Amended Complaint [CM/ECF 8-2] (the "Copyrights-in-Suit"). *See* Decl. of Colette Pelissier Field ("Field Decl.") attached as Exhibit "A" at ¶¶ 3–4.

3. The Copyrights-in-Suit cover movies (the "Infringed Works") originally authored by Plaintiff and published by Plaintiff on its subscription-based website, X-Art.com. *Id.*

4. The Copyrights in Suit are valid. *Id.*

C.   **The BitTorrent Files Are Copies of the Infringed Works**

5. The files containing the cryptographic hash values set forth in Plaintiff's Amended Complaint at CM/ECF 8-1 are identical to, strikingly similar to or substantially similar to the Infringed Works. *See* Decl. of Tobias Feiser ("Feiser Decl.") at CM/ECF 5-4, ¶¶ 11–16.

D.   **Comcast Is Certain the Infringing IP Address Was Assigned to Defendant**

6. Defendant's Internet Service Provider, Comcast is "certain" Defendant was the subscriber whose equipment was assigned the "unique" IP address 98.249.146.169 ("Defendant's IP Address") when the infringement was occurring. *See* CM/ECF 73-2; Comcast Decl. ("Comcast Decl.") attached as Exhibit "B" at ¶¶ 15, 20.

E.   **Comcast's Correlation and Excipio's Business and Computer Records Prove The Infringer Used Defendant's Internet**

7. Excipio established a TCP/IP internet connection with a person (the "Infringer") using Defendant's IP Address. *See* October 2015 Decl. of Michael Patzer ("Second Patzer Decl.") attached as Exhibit "C" at ¶ 10.

8. The Infringer entered into 203 computer transactions with Excipio (each an "Infringing Transaction," collectively the "Infringing Transactions."). *See id.* at ¶¶ 10–13.

9. As fully set forth on a printout thereof, Excipio logged each Infringing Transaction in a MySQL computer server log file. *Id.* at ¶ 14; July 2015 Decl. of Michael Patzer

1

("First Patzer Decl.") attached as Exhibit "D" at 21; the MySQL computer server log file ("MySQL") is included as an exhibit to the First Patzer Decl.

10. The 203 Infringing Transactions all occurred between 7 PM and 7 AM EST, between and including March 15, 2014 and June 8, 2014 (the "Period of Recorded Infringement") on the following dates (1) 3/15/14; (2) 4/26/14; (3) 4/27/14; (4) 4/28/14; (5) 4/29/14; (6) 4/30/14; (7) 5/1/14; (8) 5/2/14; (9) 5/3/14; (10) 6/7/14. *See* Second Patzer Decl. at ¶ 11; MySQL.

11. During each Infringing Transaction, the Infringer sent a "bit" (also known as a "piece") of a media file, via the Internet, to Excipio. *See* Second Patzer Decl. at ¶12; First Patzer Decl. at ¶¶ 16–20.

12. Each one of 203 bits correlates via a unique cryptographic hash value to a piece of a copy of one of the Infringed Works. *See* Second Patzer Decl. at ¶ 13; First Patzer Decl. at ¶¶ 16–20.

13. Each entry on the MySQL log file correlates to a packet capture computer file known as a "PCAP." *See* Second Patzer Decl. at ¶ 15; First Patzer Decl. at ¶¶ 20–22.

14. Each PCAP is a recording of the entire network transmission between Excipio and the Infringer related to the infringing bit that was transferred from the Infringer to Excipio. In other words, each PCAP is a recording of all of the zeros and ones exchanged between the Infringer and Excipio immediately before and after the transmission from the Infringer to Excipio of the bit transmitted via BitTorrent that correlates to one of Plaintiff's movies. *See* First Patzer Decl. at ¶¶ 16–20; Second Patzer Decl. at ¶ 16.

15. Defendant's putative expert, Tom Parker, testified that each of the PCAPs produced by Plaintiff that he was asked to examine contains a bit which correlates to one of the Infringed Works. *See* Deposition of Tom Parker ("Parker Depo") attached as Exhibit "E" at 34:19–23, 43:23–44:2.

16. Plaintiff produced one PCAP for each of the Infringed Works and offered to permit Defendant to pay Excipio to extract and produce all 203 of the PCAPs. *See* Second Patzer Decl. at ¶ 37; Plaintiff's Email Response No. 30 to Defendant's Request for Production attached as Exhibit "F."

17. No longer than within twenty four hours of its creation, each PCAP was saved on a Write Once Read Many ("WORM") drive so that it could not be modified, deleted,

2

manipulated, or altered. *See* Second Patzer Decl. at ¶ 17–18; First Patzer Decl. at ¶¶ 23–24. The WORM drives used by Excipio to store the PCAP recordings of the Infringing Transactions are stamped with a German government issued time stamp at least every twenty-four hours. *Id.*

18. No one modified, deleted, manipulated or altered the PCAPs. First Patzer Decl. at ¶¶ 23–26; Second Patzer Decl. at ¶¶ 19–20.

19. The infringement detection system used by Excipio to record the IP addresses of infringers was tested by Mr. Patrick Paige, a computer forensics expert, who concluded that it works. *See* Decl. of Patrick Paige ("Paige Decl.") attached as Exhibit "G" at ¶¶ 18–32.

### F. Defendant Admits to Using BitTorrent and the "Transmission" Software

20. To assemble the bits into one final complete movie file, the Infringer needed to use specialized BitTorrent software, generally referred to as a "BitTorrent client." *See* First Patzer Decl. at ¶¶ 12–13; Second Patzer Decl. at ¶ 21; Parker Depo at 22:9–14.

21. The Infringer used a BitTorrent client called "Transmission" to infringe all the Infringed Works. *See* Second Patzer Decl. at ¶ 21; MySQL.

22. Defendant admits to regularly using BitTorrent. *See* Defendant's Deposition Transcript ("Def. Depo") attached as Exhibit "H" at 79:21–80:6, 81:4–82:7, 87:18–20.

23. Defendant also admits to using the "Transmission" BitTorrent client. *Id.* at 80:17–19.

### G. No Reasonable Juror Could Find Defendant Is Not The Infringer

24. Since the infringement definitely occurred using Defendant's Internet, the universe of people who may be the infringer are limited to Defendant, a member of his family, an invited guest using Defendant's Internet, or a neighbor or lurker using Defendant's Internet.

25. The Period of Recorded Infringement lasted two months and three weeks. *See* Second Patzer Decl. at ¶ 11; MySQL.

#### (1) No Rational Juror Could Conclude Anyone Other Than Defendant Who Lived In His Home Is the Infringer

26. Defendant only lived with his wife and two daughters during the Period of Recorded Infringement. *See* Def. Depo at 28:5–15, 37:12–14; Defendant's Wife's Deposition Transcript ("Romero Depo") attached as Exhibit "I" at 18:2–11, 30:3–13.

27. Defendant's daughters were one and two years old during the Period of Recorded

3

Infringement and do not know how to use a computer. *See* Def. Depo at 28:9–12, 48:17–19; Romero Depo at 64:19–24.

28. Defendant's wife does not know what BitTorrent is and does not have the know-how to be the Infringer. *See* Def. Depo at 87:6–13.

### (2) No Rational Juror Could Conclude An Out of Town Guest Is The Infringer

29. Neither Defendant nor his wife could identify any specific person who definitely stayed over-night during the Period of Recorded Infringement. *See* Defendant's Interrogatory Responses ("Interrog. Resp.") attached as Exhibit "J" at No. 7; Romero Depo at 80:1–5.

30. From the middle of 2013 to the end of 2014, which is longer than (but overlaps) the Period of Recorded Infringement, Defendant's in-laws were the only visitors to stay for longer than a week. *See* Def. Depo at 37:3–14.

31. Defendant's in-laws do not own a computer and they did not bring their shared tablet to Defendant's home between June 2013 and December 2014. *See* Romero Depo at 41:22–42:1; Def. Depo at 38:15–21.

32. Defendant's father- and mother-in-law only stayed separately at Defendant's home for about three weeks and one month, respectively. *See* Def. Depo at 37:3–14.

33. Just one month prior to the beginning of the Period of Recorded Infringement, Defendant and his family visited his in-laws in Argentina for nearly two months. *See* Def. Depo at 8:5–18; Romero Depo at 11:16–21.

34. There is no overnight guest who could have committed all of the Infringements that occurred over a period of two months and three weeks. *See* ¶¶ 24–33, *supra*.

### (3) No Rational Juror Could Conclude A Local Guest Could Be The Infringer

35. Defendant and his wife identified Defendant's parents, who live in Miami-Dade County, and one of Defendant's wife's friends, who resides in Broward County, as the only local visitors to their home between the middle of 2013 to the end of 2014. *See* Def. Depo at 40:10–42:24; Romero Depo at 21:7–22:2, 32:6–33:5; Interrog. Resp. No. 7.

36. Neither Defendant's parents nor the Broward County guest ever brought a computer to Defendant's home. *See* Romero Depo at 46:24–47:4.

4

37. Nor did any local guest stay overnight each day on which the infringement occurred. *See generally* Def. Depo and Romero Depo.

### (4) No Rational Juror Could Conclude A Neighbor Is the Infringer Because the Probability is 1 in 37,679

38. Neither Defendant nor his wife saw, heard, tasted, touched, or smelled anyone outside Defendant's home use Defendant's internet service. *See* Def. Depo at 90:20–23; Romero Depo at 81:14–82:14.

39. Neither Defendant nor his wife saw a person camped out around Defendant's home. *See* Def. Depo at 90:20–23; Romero Depo at 81:14–82:14.

40. Defendant testified that his WiFi router was password protected from 2007 until "February or March of 2014." Def. Depo at 22:3–24:4, 52:6–25.

41. Defendant testified that he periodically changed his password and that no one else knew what it was. *See id.* at 54:19–25.

42. Just before the Period of Recorded Infringement, in "February or March of 2014," Defendant testifies he removed the password from his WiFi router. *See* Def. Depo at 22:14–25.

43. Defendant's neighbor testified that he remembers seeing many secured WiFi wireless networks but does not remember ever seeing any that were unsecured. *See* Defendant's Neighbor's Deposition Transcript ("Neighbor Depo") attached as Exhibit "K" at 19:4–13, 26:1–2, 37:18–38:23.

44. Based upon survey evidence, Dr. Daniel Sarel, a statistics professor at the University of Miami, calculated that there is a one in two hundred (1 in 200) chance that an American uses BitTorrent and the BitTorrent client "Transmission." *See* Sarel Report ("Sarel Report") attached as Exhibit "L" at ¶ 29.

45. Based on survey evidence, Dr. Daniel Sarel, opined the probability of two Americans living next to each other that use BitTorrent and the BitTorrent client "Transmission" is one in thirty seven thousand, six hundred and seventy nine (1 out of 37,679). *Id.* at ¶ 30.

46. According to Defendant's expert, the Infringer was likely "a technical person … [a] techy over [a] lay person." Parker Depo at 72:19–21.

47. Defendant is a "software architect and engineer for building a cloud system for IoT—internet of things—type devices." Def. Depo, at 24:5–11. For over ten years he has worked for various companies as a software developer, Java developer, senior Java developer,

5

software engineer, senior software engineer, development manager, software architect, and chief cloud architect. *See id.* at 8:20–16:21; Interrog. Resp. at No. 2.

48. Defendant did not perform any investigation about the infringement during the period of discovery and did not ask any of his neighbors whether they ever used his internet. *See* Def. Depo at 53:25–54:2.

### (5) The Additional Evidence Points To Defendant Being the Infringer

#### i. Defendant is a Serial BitTorrent User

49. Between July 27, 2013 and December 8, 2014 (the "Period of Additional Evidence") Excipio logged Defendant's IP address as being a peer in 315 swarms associated with the downloading and distribution of 315 different media files. Collectively, these works are referred to herein as the "Add'l Evid." The Add'l Evid. is attached as an exhibit to the First Patzer Decl.

50. Between July 2013 and February 2014, when only Defendant and his family had consistent access to his password-protected internet, Excipio logged Defendant's internet being associated with 176 of the 315 media files. *See* Add'l Evid.

51. After the time Defendant testified he took the password off his WiFi router, Excipio logged Defendant's internet being associated with 139 media files. *See id.*

52. Defendant testifies he secured his internet with a password in response to receiving notice of this litigation in October or early November 2014. *See* Def. Depo at 18–23, 53:8–10, Interrog. Resp. 5.

53. Defendant's IP address <u>continued</u> to be associated with swarms for third-party works until December 8, 2014—the exact date on which Plaintiff amended its Complaint to proceed against Defendant. *See* Add'l Evid.; CM/ECF 8.

#### ii. The Odds of Two Serial BitTorrent Users Living Next To Each Other is 1 in 10,000

54. Relying on survey results from the American Assembly—a public policy institute of Columbia University that found "that only 1% of Americans are heavy pirates of TV/movie content (i.e., possess more than 100 movies or TV shows and copied or downloaded most or all of them)—Dr. Daniel Sarel opines "[a]ssuming a heavy pirate has only one next door neighbor, the probability that a "heavy pirate" living in the U.S. also lives next to another "heavy pirate" is

6

one out of ten thousand (1 out of 10,000)." *See* Sarel Report at ¶ 23.

### (6) Some of Defendant's Material Testimony Has Been Too Fortuitous To Be Credible And Is Provably False

#### i. Defendant's Password Story is Too Fortuitous Too Be Credible

55. After being consistently password protected since 2007, Defendant testified he removed the password from his WiFi router in "February or March of 2014." Def. Depo at 22:14–25. This was, at most, one month prior to the first recorded infringement in March of 2014. *See* Second Patzer Decl. at ¶ 11; MySQL.

#### ii. Defendant Provided False Testimony About Copyright Warning Notices

56. On October 3, 2011, Comcast sent Defendant a copyright infringement warning for allegedly using BitTorrent to download **REDACTED**. *See* Comcast Decl. at ¶¶ 27–38; Comcast Subpoenaed Response ("Comcast Response") attached hereto as Exhibit "M" at pp. 35–37. **REDACTED** is one of Defendant's favorite musicians. *See* Def. Depo 46:7–9.

57. Twice on November 23, 2012 and on December 16, 2012, Comcast sent Defendant a copyright infringement warning for allegedly using BitTorrent to download a movie or movies about the character **REDACTED**. Comcast Decl. at ¶¶ 27–38; Comcast Resp. at pp. 38–47.

58. Plaintiff recorded Defendant download another **REDACTED** film contemporaneously with Plaintiff's works. *See* Add'l Evid.

59. Defendant did not disclose the copyright infringement warning notices in discovery, *see* Interrog. Resp. 10, and testified, under oath, that he checked the email to which Comcast sent these notices. *See* Def. Depo at 6:23–7:3, 71:14–72:13; Comcast Decl. at ¶¶ 27–38; Comcast Resp. at pp. 35–47.

#### iii. Defendant's Testimony About The Scope of His BitTorrent Use Is Incredible

60. Although Defendant denies ever using BitTorrent to download movies or TV shows, *see* Def. Depo at 83:20–25, his IP address was broadcast as being a peer in swarms downloading and distributing the following movies and TV shows: Guardians of the Galaxy, The Grand Budapest Hotel, Oblivion, Mortal Instruments: City of Bones, Star Trek the Next Generation, Modern Family, and Game of Thrones. *See* Add'l Evid. Defendant admits to liking

7

or having watched these movies and TV shows. *See* Def. Depo at 72:14–18, 73:11–14, 73:23–74:4, 74:7–8, 74:15–22; Romero Depo at 69:14–19.

61. Relatively obscure books and music with which Defendant is familiar were also downloaded—*e.g.*, "Ender's Game" and "Tales of Alvin Maker" by Orson Scott Card, "Naked Lunch" by William Burroughs, and the musicians Hank Williams, Temple of the Dog, and La Oreja de Van Gogh. *See* Add'l Evid.; Def. Depo 64:21–65:6, 76:4–6, 15–16; Romero Depo at 38:8–15. Defendant's interests in digital photography, video games, and pornography also match Plaintiff's Additional Evidence. *See* Add'l Evid.; Def. Depo at 43:15–19, 44:10–11, 75:1–5; Romero Depo at 69:20–25.

62. Between February or March of 2014 and October or November of 2014, when Defendant testified his internet was <u>not</u> password protected, Excipio logged Defendant's IP address being associated with BitTorrent swarms downloading and distributing classical music, including Beethoven and Mozart. *See* Add'l Evid.

63. Defendant likes Beethoven, and publicly "liked" Beethoven on his YouTube page. *See* Def. Depo 46:11–12, 49:1–2; Romero Depo 71:19–20; *see also* Screenshot of Defendant's YouTube page, attached as Exhibit "N"[1]

64. Throughout the Period of Additional Evidence, Defendant's IP address was also associated with BitTorrent swarms associated with young children's movies and shows, some of which are in Spanish (*e.g.*, Como Entrenar a Tu Dragon) and several of which Defendant or his wife admit that they or their two young daughters have seen – *e.g.*, Kung Fu Panda, Tangled, Mickey's Christmas Carol, Winnie the Pooh. *See* Add'l Evid.; Def. Depo at 34:3–10, 34:23–24; Romero Depo at 17:8–13, 28:21–25, 11, 29:20.

65. Defendant, his wife, and his children speak Spanish. *See* Def. Depo at 73:7–8; Romero Depo at 13:24–14:4; Neighbor Depo at 14:15.

66. The other children in Defendant's neighborhood are much older than Defendant's daughters and Defendant's wife is not aware of any of them speaking Spanish. *See* Def. Depo at 33:11–22; Romero Depo at 15:25–16:4, 27:9–10, 18–22, 28:1–2.

67. The closest children to Defendant's home were a three to five minute walk from Defendant's home. *See id.*

---

[1] Someone removed the link to Beethoven from Defendant's YouTube page during this litigation, but Defendant testifies that he does not recall doing this. *See* Def. Depo at 46:16–47:7.

8

### (7) Other Evidence Implicates Defendant

#### i. BitTorrent Use Stopped Exactly When Defendant Went on Vacation

68. Defendant was in Argentina between December 2013 and February 2014, and no one was in his home during this time. *See* Def. Depo at 8:8–19; Interrog. Resp. 5. Prior to Defendant's departure, his IP address was broadcast as being a peer in BitTorrent swarms downloading and distributing third party works every single month. *See* Add'l Evid.

69. The BitTorrent activity emanating from Defendant's IP address ceased on December 9, 2013, on or about the time Defendant left for Argentina, and it did not resume until Defendant returned home on or about February 17, 2014. *See* Add'l Evid.; Def. Depo at 8:8–19; Interrog. Resp. 5.

70. The only month during which Defendant's internet was not broadcast as being a peer in the swarms downloading and distributing via BitTorrent third party works was the month that Defendant was out of the country. *See* Add'l Evid.

#### ii. Defendant Has Not and Will Not Produce a Computer For Examination

71. In mid-November 2014, shortly after being notified of this lawsuit, Defendant returned to his former employer the only computer he identified in discovery as being in his possession between May 2012 and May 2015.[2] *See* Def. Depo at 18–23, 26:11; Defendant's Production as discussed in detailed at CM/ECF 72, 72-1, 72-2, 72-3, 72-4.

72. Throughout the litigation and despite being within the scope of discovery requests, Defendant did not identify or produce records from a personal laptop that he possessed throughout the Period of Recorded Infringement and Period of Additional Evidence, and which he still possesses. *See* Def. Depo at 69:20–70:2; CM/ECF 72, 72-1, 72-2, 72-3, 72-4.

73. Prior to identifying this laptop, Defendant testified that a much older Dell

---

[2] Based on Defendant's paper discovery, Plaintiff was initially led to believe that this computer had been transferred much earlier, in August of 2014. *See* Interrog. Resp. 4. In any case, it is noteworthy that Defendant retained and did not return the other computer devices he borrowed from his former employer. *See* Def. Depo at 59:10–13.

9

computer was his "last non-work personal computer." *Id.* at 18:17–25, 27:23–28:1.

74. Defendant's wife testified that Defendant's family's personal laptop was last used in August of 2013 but was no longer in the home since Defendant "took care of it." Romero Depo at 59:11–60:2.

75. Defendant, in turn, testified that his family's personal laptop is still in his home on a shelf in a closet. *See* Def Depo at 61:17–62:9.

76. Defendant testified that he did not disclose his family's personal laptop because he "checked the computer for the system log and the last log-in date was like sometime mid 2013, early 2013 so I didn't check anything on it because it wasn't on during any of the times in question." Def. Depo at 68:14–69:1.

77. Defendant admitted to never searching his personal laptop for evidence within the scope of a document request propounded on him. *See id.*; CM/ECF 72, 72-1, 72-2, 72-3, 72-4.

78. Plaintiff asked Defendant whether he would produce his laptop for inspection, and Defendant refuses to allow anyone to examine it. *See* Def. Depo at 95:7–19.

### H. Defendant Has No Evidence to Support any of His Affirmative Defenses

79. Plaintiff has never distributed its works through the BitTorrent protocol, nor has it consented to or acquiesced in any person's (other than its investigator) downloading or distribution of its works via BitTorrent. *See* Field Decl. at ¶¶ 9, 14.

80. Plaintiff has not surrendered any rights to any of its works, and Plaintiff's website states that *all* of its works are copyrighted. *Id.*; X-Art.com Printout, attached as Exhibit "O."

81. Prior to this lawsuit, Plaintiff and Defendant were complete and total strangers; Defendant "had no idea who [Plaintiff] was." Def. Depo at 89:9–10; Field Decl. at ¶¶ 10–13.

82. Defendant has no evidence or reason to believe that some but not all parts of the Infringed Works were downloaded using his wireless internet. *See* Def. Depo at 102:17–20.

83. When asked whether Plaintiff should be suing someone else instead of or in addition to Defendant, Defendant testified: "I don't know." *Id.* at 103:24–4.

84. When asked whether he believed that Plaintiff had misused its copyright in any way whatsoever, Defendant testified: "I don't know." *Id.* at 104:11–14.

85. When asked whether he believed that Plaintiff had engaged in any wrongdoing whatsoever in connection with the at-issue copyright infringement or this litigation, Defendant testified: "I don't know anything about that." *Id.* at 105:8–25.

86. When asked whether he believed that Plaintiff had failed to mitigate its damages or should have done more to prevent the theft of its work, Defendant testified: "I'm not aware of any [failure to mitigate]." *Id.* at 106:3–6.

87. When asked whether Defendant was aware of any facts or information that might support the argument that the Infringed Works should be considered as one work for purposes of copyright, Defendant testified: "I don't know…. I'm not aware . . . ." *Id.* at 111:6–17.

88. Defendant has agreed to voluntarily withdraw his Ninth Affirmative Defense (safe harbor) and his Eleventh Affirmative Defense (license, consent, and acquiescence). *See* Email attached as Exhibit "Q."