## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

-----------------------------------------------------------------X

MALIBU MEDIA, LLC,

         Plaintiff,

                vs.

ROBERT DARE,

               Defendant.

Civil No. 0:14-cv-61957

-----------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF MICHAEL PATZER [CM/ECF 62]

**I.**     **INTRODUCTION**

      Defendant's Motion fails to state a legally cognizable reason to exclude Michael Patzer from testifying. To start, Mr. Patzer's testimony is lay witness testimony, _not_ expert witness testimony. Plaintiff intends to use the direct examination of Mr. Patzer to authenticate, prove the chain of custody for, and thereby introduce Excipio's computer generated business records. Mr. Patzer will also merely report what the computer generated business records state. In short, when Mr. Patzer is introducing the data proving the infringement occurred, and the additional evidence of third party BitTorrent use, he is essentially testifying as a documents custodian. By so doing, he is _not_ providing expert testimony. Significantly, the only court to ever rule on the issue of whether Mr. Patzer's testimony qualifies as expert testimony expressly found it did not. Next, even though his testimony is lay witness testimony, out of an abundance of caution, because this argument gets raised, Mr. Patzer provided a complete report that complies with Fed. R. Civ. P. 26(a)(2)(B). In that report, Mr. Patzer detailed his experience, his knowledge of the

facts, and laid out exactly how the computer records and business records were generated. To do so, he explained the process of how Excipio's computers recorded Defendant's IP address sending Excipio's servers pieces of Plaintiff's works. Patrick Paige is an expert and he tested Excipio's system and concluded that it works. Mr. Patzer's testimony explaining the computer recording process used by Excipio duplicates Mr. Paige's testimony regarding the recording process of the infringing transactions; namely, that PCAPs are used. Regardless, even if Mr. Patzer is erroneously adjudged to be providing expert testimony, the claimed deficiencies in his report are immaterial and should have been pursued by Defendant in a deposition or otherwise in discovery. Significantly, Defendant failed to depose Mr. Patzer or conduct his own test of the infringement detection process. For the foregoing reasons, as explained more fully below, Plaintiff respectfully requests this Court deny the subject Motion.

## II.     MR. PATZER'S PROPOSED TESTIMONY IS LAY WITNESS TESTIMONY

Although disclosed as an expert witness, Plaintiff does not intend and never intended for Mr. Patzer to testify as an expert.[1] To explain, Mr. Patzer is an independent contractor who works predominantly for Excipio, a German company. *See* Declaration of Michael Patzer ("Patzer Decl."), CM/ECF 85 and 102-4, at ¶ 5. Excipio's infringement data collection system was used to record the infringement of Malibu's works. *Id.* at ¶ 7. Mr. Patzer designed, implemented, maintains, and monitors the data collection system. *Id.* at ¶ 6. Mr. Patzer will answer all of the questions necessary to authenticate the PCAP and MySQL log files pursuant to Fed. R. Evid. 901(a).[2] To authenticate the computer generated records, Rule 901(a) requires the proponent to "produce evidence sufficient to support a finding that the item is what the

---

[1] Despite filing nearly identical suits since 2013, Plaintiff only started designating Mr. Patzer as an expert in 2015. It did so not because he is giving expert testimony but to avoid the argument that he should give a report.

[2] For an explanation of PCAPs and MySQL log files see paragraphs 16-23 of the Patzer Decl, CM/ECF 102-4.

proponent claims it is." *Id.* This can be accomplished through testimony of a witness with knowledge that the "item is what it is claimed to be." Fed. R. Evid. 901(b)(1). Mr. Patzer will also answer all of the questions necessary to lay the foundation for the introduction into evidence of the PCAP and MySQL log files as business and computer records within the meaning of Fed. R. Evid. 803(6).[3] Finally, he will testify that PCAPs are recordings of computer transactions during which a person using IP address 98.249.146.169 sent pieces of the infringing computer files to the servers that he personally maintains and monitors. *Id.*

None of that testimony constitutes expert witness testimony. Indeed, in giving nearly the exact same testimony in a case before the Southern District of Indiana, the Honorable Magistrate Judge Dinsmore specifically found that his testimony was *not* expert testimony.

> Mr. Patzer limited his testimony to his "own personal observations and perceptions." *Rollins,* 544 F.3d at 823. <u>He described only his relationship to IPP</u>[4]; <u>the nature of his business; and the sorts of records he had obtained while working in that business.</u> He thus did not have to bring his "wealth of experience ... to bear" on facts or events outside of his personal observations, *Oriedo,* 498 F.3d at 603, such that he was not testifying as an expert.

> Further, <u>the fact that Patzer discussed matters that happened to involve technical issues does not transform his testimony into expert testimony</u> . . . Patzer in this case may have had specialized knowledge about the process by which Defendant Kelley's IP address was identified, but <u>he gained that knowledge through the investigation that gave rise to this case, and he conducted that investigation "not because of experience, training or specialized knowledge within the realm of an expert, but because of ... his position in the business"</u> of IPP. *Bank of China,* 359 F.3d at 181. His <u>testimony therefore was not expert testimony</u>, and Fed.R.Civ.P. 26(a)(2) accordingly imposed no obligation on Plaintiff to produce expert reports for Patzer.

---

[3] Plaintiff does <u>*not*</u> concede that Excipio's computer generated records constitute out-of-court "statements" within the meaning of Fed. R. Evid. 801(a). Computers are incapable of making "statements" within the meaning of the Rule; statements can only be made by humans. Accordingly, the records, which involve no human input, are <u>*not*</u> subject to the exclusionary rules applicable to hearsay evidence. Regardless, should the Court disagree, the records will be introduced under the business records hearsay exception of Rule 803(6).

[4] IPP is a licensee of Excipio. It uses Excipio's system.

*Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at \*7 (S.D. Ind. May 18, 2015) *report and recommendation adopted,* No. 1:13-CV-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015).   The transcript of Mr. Patzer's direct testimony in the *Tashiro* case is attached hereto as Exhibit A.   Mr. Patzer's testimony will be substantially identical in this case.  The expected testimony is as follows:

**[MR. PATZER'S BACKGROUND WILL BE STATED]**

**Q.    What does Excipio do, i.e. what kind of business is it?**

A.    Excipio monitors and logs BitTorrent traffic, and records copyright infringements.

**Q.    What does Excipio do with this data?**

A.    It sells it to copyright owners who either want it for litigation or business purposes.

**Q.    What kind of business purposes?**

A.    To figure out what is popular where.

**Q.    What do you do for Excipio?**

A.    I designed, implemented, and now maintain the system and computers that Excipio uses.

**Q.    So you maintain Excipio's system?**

A.    Yes

**Q.    And all of the computers, servers and software associated with the system?**

A.    Yes.

**Q.    Did Excipio ever record infringing BitTorrent transactions between its servers and someone using IP Address 98.249.146.169?**

A.    Yes.

**Q.    What happened in those transactions?**

4

A.      The infringer sent Excipio's servers pieces of media files.

**Q.     And, were its servers, computers and software in good working order at the time the log files and computer recordings were made?**

A.      Yes.

**Q.     Mr. Patzer, do you recognize this document?**

A:      Yes.

**Q:     What is it?**

A.      It shows each BitTorrent transaction where someone using IP address 98.249.146.169 sent Excipio's servers a piece of a copy of one of Malibu Media's movies.

**Q.     And each transaction correlates to a specific movie?**

A.      Yes.

**Q.     And the times and dates are on there?**

A.      Yes.

**Q.     Do the contents of this document accurately reflect what is contained in the server log file and in the computer recordings of the infringing BitTorrent transactions?**

A.      Yes.

 **[PLAINTIFF WILL MOVE TO ADMIT THE MYSQL LOG FILE]**

**Q.     How many of Malibu's copyrighted movies did someone using  IP Address 98.249.146.169 distribute via BitTorrent?**

A.      17.

**Q.     And from when to when?**

A.      From 3/15/2014 to 6/8/2014.

**Q.     And on what dates?**

A.      On 3/15/14, 4/26/14, 4/27/14, 4/28/14, 4/29/14, 4/30/14, 5/1/14, 5/2/14, 5/3/14, and 6/7/14.

**Q.    Does Excipio have a computer recording of each of these BitTorrent transactions?**

A.    Yes.

**Q.    Where does it store them?**

A.    They are written onto a WORM drive.

**Q.    What is a WORM drive?**

A.    WORM means write once read many.  Once data is written to a WORM drive it cannot be altered or edited, only read.

**Q.    Where are the WORM drives stored?**

A.    The WORM drives are stored in a computer safe.

**Q.    Did you extract any of these records from the WORM drives in this case?**

A.    Yes, I extracted one recording of a BitTorrent transaction for each movie.

**Q.    Could you extract all the recordings if someone would pay for Excipio to do it?**

A.    Yes.

**Q.    What did you do with each of the recordings you extracted?**

A.    I sent them to Mr. Paige.

**[PLAINTIFF WILL MOVE TO ADMIT THE 17 PCAPS, THEN PRESENT MR. PATZER WITH THE ADDITIONAL EVIDENCE LIST.]**

**Q.    Mr. Patzer, have you ever seen this document?**

A.    Yes.  It's a record of the third party works that Excipio logged being broadcast as a peer in BitTorrent swarms by someone using IP Address 98.249.146.169 .

**Q.    Were Excipio's computer servers and software in good working order and properly maintained when this data was logged?**

A.    Yes.

**Q.    Does this document accurately report the data in Excipio's server log files?**

A.    Yes.

**[PLAINTIFF WILL MOVE TO INTRODUCE THE EXHIBIT]**

**Q.     From when to when was IP address 98.249.146.169 associated with the distribution of the media files on that document?**

A.     From 7/27/2013 to 12/8/2014.

**Q.     How many different files are listed on that document?**

A.     315.

**[HE WILL THEN GO THROUGH A FEW OF THE DIFFERENT FILES.]** [5]

As the foregoing makes clear, none of the testimony that Mr. Patzer will offer at trial is expert testimony.  Mr. Patzer's sole purpose in this litigation is to authenticate, lay the foundation for, and introduce the computer and business records Excipio keeps in the ordinary course of its business.

**III.     LEGAL STANDARD**

Federal Rule of Civil Procedure 26 states that a party must "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  Any expert witnesses "retained or specially employed to provide expert testimony in the case" must also provide a "written report – prepared and signed by the witness" that includes all of the information listed in the Rule.  Fed. R. Civ. P. 26(a)(2)(B).  "The expert disclosure requirement under Fed.R.Civ.P. 26(a)(2) (B) 'is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'"  *Zaki Kulaibee Establishment v. McFliker*, No. 08-60296-CIV, 2011 WL 1327145, at *4 (S.D. Fla. Apr. 5, 2011) (denying motion to exclude testimony) (citations omitted).  Exclusion of testimony or witnesses is _not_

---

[5] Prior to trial Plaintiff intends to either get Defendant to stipulate that the BitTorrent copies of the movies are copies or have the Court take judicial notice under Fed. R. Evid. 201.  There can be no dispute over this issue because the cryptographic hash values prove it.

automatic under Rule 37 when there is a purported failure to "provide information . . . as required by Rule 26(a) or (e)" if "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).   Indeed, "the exclusion of expert testimony is a severe sanction that is not appropriate where a party's actions do not result in prejudice to the opposing party." *McFliker*, 2011 WL 1327145 at *4.

## IV.  ARGUMENT

### A.  Mr. Patzer is a Fact Witness and is Not Providing Expert Testimony

Because Mr. Patzer will testify only about the facts of the infringement involved in this case and the computer generated records evidencing the same, his testimony is lay witness testimony.  "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Eberhart v. Novartis Pharm. Corp.*, 867 F. Supp. 2d 1241, 1251 (N.D. Ga. 2011) (*quoting* Fed. R .Evid. 701 advisory committee's note (2000 amends.)).  Mr. Patzer's proposed testimony does *not* result from "a process of reasoning which can be mastered only by specialists in the field."  His testimony involves no specialized reasoning.  And, "the fact that Patzer discussed matters that happened to involve technical issues does not transform his testimony into expert testimony . . . Patzer in this case may have had specialized knowledge about the process by which Defendant Kelley's IP address was identified, but he gained that knowledge through the investigation that gave rise to this case, and he conducted that investigation 'not because of experience, training or specialized knowledge within the realm of an expert, but because of ... his position in the business' of IPP." *Malibu Media, LLC v. Tashiro*, 2015 WL 2371597, at *7 (holding that Mr. Patzer's testimony is lay witness testimony).

By way of analogy, "[a] treating physician is not an 'expert' witness if he or she testifies about *observations based on personal knowledge*, including the treatment of a party." *Principi v. Survivair, Inc.*, 231 F.R.D. 685, 692 (M.D. Fla. 2005) (only doctor's hypothesis about the cause of injury was "expert testimony" because it was not based on personal observation) (emphasis added). *See also United States v. Henderson,* 409 F.3d 1293, 1300 (11th Cir. 2005) (same). Similarly, "[a] law-enforcement officer's testimony is a lay opinion if it is 'limited to what he observed ... or to other facts derived exclusively from [a] particular investigation.'" *United States v. Gaytan*, 649 F.3d 573, 581 (7th Cir. 2011) (quoting *United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007)). "On the other hand, an officer testifies as an expert when he brings 'the wealth of his experience as [an] officer to bear on those observations and ma[kes] connections for the jury based on that specialized knowledge.'" *Id.*; *see also United States v. Fenzl*, 670 F.3d 778, 782 (7th Cir. 2012). Here, Mr. Patzer's testimony is based on his personal knowledge of the operation of the infringement detection system and the results it produced in this case. He is not offering testimony that requires specialized reasoning to make connections for the jury.

### B. Mr. Patzer Was Not Required to Provide an Expert Witness Report Pursuant to Fed. R. Civ. P. 26(a)(2)(B) But Did So Regardless

As a witness offering only lay testimony, Mr. Patzer was *not* required to prepare and serve an expert witness report in accordance with Fed. R. Civ. P. 26(a)(2)(B). The testimony Mr. Patzer will give is merely incidental to his role as an independent contractor for Excipio. As such, he was not "specially retained to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Instead, Mr. Patzer has "ground-level involvement in the events giving rise to the litigation" as an independent contractor of the company who maintains the system, servers, computers, and software and therefore can lay the foundation necessary to report the contents of the computer and business records. *See Malibu Media, LLC v. Harrison*, 12-cv-01117, CM/ECF 272, at p. 4

(S.D. Ind.) (a proposed expert with no "ground-level involvement in the events giving rise to the litigation" who was clearly "specially retained to provide expert testimony" was required to prepare an expert witness report).  Because Mr. Patzer was not "specially retained to provide expert testimony," he was not required to prepare a report under Fed. R. Civ. P. 26(a)(2)(B).  Regardless, he provided a written report that complies with the rule knowing that Defendant would attempt to argue that he was required to do so.

### C. Mr. Patzer is Qualified to Testify About the Infringement Detection System Used to Detect the Infringement at Issue in this Case

Even if his testimony is considered expert testimony, and it is not, Mr. Patzer is qualified to give it.  Defendant argues that "Patzer should be excluded because he is not qualified to testify competently in the instant case."  Motion, pp. 3-4.  Nothing could be further from the truth.  There is no one more qualified than Mr. Patzer, who designed, implemented, and maintains, the infringement detection system, servers, computers, and software to testify about that system and introduce the records.  The basis for Defendant's argument is the conclusory assertion that Mr. Patzer's report only states that he graduated from high school and that he subsequently worked in IT since 1999 without providing "a curriculum vitae or detail what in the 'Information Technology business' he was doing, which could have essentially been anything[.]"  Motion, p. 5.  Defendant further claims that the purported "failure to disclose expert qualifications was not justified or harmless" and that accordingly, under Rule 37, his testimony should be excluded.

Fed. R. Civ. P. 26(a)(2)(B) requires that an expert's written report must contain "the witness's qualifications, including a list of all publications authored in the previous 10 years[.]"  The Rule does not require the expert to prepare and produce a curriculum vitae.  Mr. Patzer's declaration clearly lists his qualifications:

3.  I went to Neumarkt i.d. Opf for high school in Germany and graduated from there in 1999.

4.  I have worked in the Information Technology business since 1999.

5.  I am currently an independent contract for Excipio GmbH ("Excipio"), a German company . . .

6.  I designed, implemented, maintain, and monitor the data collection system that Excipio both owns and uses to identify the IP addresses used by people to commit copyright infringement via the BitTorrent protocol.

***

8.  It took over a year to develop the proprietary software and system used by Excipio.

*See* Patzer Decl, CM/ECF 102-4.   The foregoing paragraphs demonstrate Mr. Patzer's qualifications to testify about the infringement detection system and results obtained.   Defendant could have obtained any further detail about Mr. Patzer's qualifications through a deposition or other discovery method.   At no time did Defendant even attempt to pursue any further details.[6]

Defendant fails to demonstrate or even argue that he was or will be prejudiced in any way because of the claimed insufficient detail regarding Mr. Patzer's background.   Accordingly, exclusion of his testimony is improper and unwarranted.   *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness . . . *unless the failure was substantially justified or is harmless*.").

### D.  Mr. Patzer's Report Complies With Fed. R. Civ. P. 26(a)(2)(B)

Mr. Patzer's report contains a "complete statement of all opinions the witness will express and the basis and reasons for them" in compliance with Fed. R. Civ. P. 26(a)(2)(B).

---

[6] As explained below, although counsel for the parties corresponded regarding a potential deposition and Plaintiff cooperated with Defendant regarding same, Defendant ultimately dropped the issue and nothing came of it.

Defendant's argument to the contrary is baseless.  Defendant claims that the report is "deficient" and that it "contains vague, general opinions and does not sufficiently detail the basis for each or the methodology and facts relied upon."  Motion, p. 9.  Contrary to Defendant's conclusory assertion, however, the report contains a detailed explanation of the components of the system used by Excipio to detect infringement (¶ 9), the process by which Excipio uses the system to detect infringement (¶¶ 11-20), how Excipio logs and stores the infringement data (¶¶ 21-25), and what the computer and business records show (¶ 20).  That Defendant believes Mr. Patzer's report should have included information regarding "how, when, where, or why" he designed and implemented the data collection system does not alter the fact that it satisfies the requirements of Rule 26(a)(2)(B) as written.  Motion, p. 10.  Equally ineffectual is Defendant's claim that the report contains "general statements that could relate to any of Plaintiff's near-5000 Malibu Media cases, and none are specific to the instant case."  Motion, p. 11.  Mr. Patzer's testimony is the same in every case because he uses the same servers, computers, and software to record and log IP addresses in every case.  He has no opinion regarding the Defendant's personal liability because his system only detects IP addresses, not individuals who may have used those IP addresses to infringe.  Mr. Patzer's sole role in the litigation is to authenticate and introduce computer and business records kept in the ordinary and regular course of Excipio's business. Defendant's argument is both obvious and irrelevant.

To the extent that Defendant argues that "Patzer has provided no proof that his data collection system is accurate or reliable," Defendant's assertion is wrong and also irrelevant. Motion, pp. 9-10.  In paragraph 10 of his declaration, Mr. Patzer states that the "data collection system accurately collected and recorded evidence that the defendant infringed Plaintiff's copyrighted work(s)" and then details the exact process by which it did so.  He further explains

how packet analyzers are used to record the infringing transactions, that the software is widely used and "capable of accurately recording network traffic," and for purposes of ensuring data integrity, that the relevant evidence is saved onto uneditable WORM tape drives.  Patzer Decl., CM/ECF 102-4, ¶¶ 16-21.  The WORM tape drives which store the infringement evidence are also "electronically stamped with a German government issued time stamp" and then "stored in a computer safe for safekeeping."  *Id.* at ¶¶ 24-25.

Finally, Defendant's argument that the report "lacks sufficient factual foundation" because Mr. Patzer "does not explain the chain of custody" and "uses general, passive-voice phrasing . . . where it is impossible to tell who is doing the acting," also fails.  Motion, p. 13.  His report is based on firsthand knowledge.   His testimony regarding data integrity and chain of custody is not based on hearsay.  Regardless, chain of custody arguments go to the weight of the evidence, not the admissibility of the evidence.  *See United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985) ("Challenge to the chain of custody goes to the weight rather than the admissibility of the evidence.  Thus, the adequacy of the proof relating to the chain of custody is not a proper ground to challenge the admissibility of the evidence.") (Internal citations omitted).

In sum, none of the details which Defendant claims are missing from Mr. Patzer's report are relevant or material.  Much more than the entirety of Mr. Patzer's anticipated testimony is laid out in his declaration.  Any follow up questions Defendant deems necessary to the testimony should have been asked at a deposition but can regardless be asked on cross examination.  There is no legally cognizable basis for excluding any part of Mr. Patzer's testimony.

### E.  Despite Plaintiff's Cooperation, Defendant Failed to Depose Mr. Patzer

Defendant's next erroneous argument asserts that Mr. Patzer "should be excluded because, despite Defendant's requests, Plaintiff has not made him available for deposition

outside Germany.  Consequently, Defendant has not been able to determine his reliability beyond what was written in his report."  Motion, p. 6.  Plaintiff was not obligated to produce a foreign third party witness at its own expense in this district to be deposed.  Defendant cites no authority to the contrary.  Mr. Patzer would have traveled to Florida for a deposition had Defendant paid the requisite costs.  That Defendant chose not to pay these costs does not mean that Mr. Patzer was unavailable to be deposed.  Further, Defendant failed to pursue Mr. Patzer's deposition via remote means, either telephonically or by video although Plaintiff habitually offers defendants this option and did so here.  Defendant did not file a motion to compel or otherwise diligently pursue the deposition; these failures are not a reason to preclude Mr. Patzer from testifying.

  **1. Defendant Failed to Even Attempt to Arrange a Telephonic or Video Deposition of Mr. Patzer**

   Defendant argues that a remote deposition of Mr. Patzer would have caused him to incur fees that were "wholly unreasonable."  Motion, p. 7.  However, no rule of procedure or evidence contemplates excluding testimony because the cost of pursuing counter-evidence is purportedly high.  Regardless Defendant's argument is wrong.  Defendant claims that the issue "is whether a certified court reporter is available" and that the only way to depose Mr. Patzer remotely is to get "approval from the German Ministry of Justice," fly Mr. Patzer to Frankfurt, Germany, fly a "United States certified court reporter" to Germany, and pay a number of different fees.  Motion, pp. 6-7.  Defendant claims the foregoing would have been necessary because it "contacted certified court reporters All Good Reporters, LLC, who confirmed that deponents cannot be sworn in via videoconference."  Motion, p. 6.  Had Defendant conducted legal research instead of merely asking a court reporting company its opinion about the law governing depositions, Defendant would have realized the frivolity of his position.

Courts across the country, including this one, have permitted deponents to be sworn by court reporters remotely. *See e.g. Etienne v. Hang Tough, Inc.*, No. 08-61682-CIV-COHN, 2009 WL 2030133, at *2 (S.D. Fla. July 9, 2009) ("the Court will permit the court reporter (and an interpreter, if necessary) to be present at the same location as Defendant's and Plaintiff's counsel."); *Hudson v. Spellman High Voltage*, 178 F.R.D. 29, 32 (E.D.N.Y. 1998) ("court authorizes the officer (notary public) to administer the oath to the witnesses and perform such other duties as are required by law, *see* Fed.R.Civ.P. 30(b)(4), from the location in New York where plaintiff and defendant's counsel will be conducting the examination."); *Aquino v. Auto. Serv. Indus. Ass'n*, 93 F. Supp. 2d 922, 923 (N.D. Ill. 2000) (had the parties agreed or sought court order, deposition transcripts would have likely been admissible where notary public swore witnesses telephonically from office of counsel; regardless permitting plaintiff to re-depose witnesses in presence of notary for sole purpose of asking whether the previously taken testimony was true and correct); *United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977) ("We cannot accept Turner's argument that for constitutional purposes an oath or affirmation is invalid merely because it is taken over the telephone. The moral, religious and legal significance of the undertaking remains the same whether the oath taker and the witness communicate face-to-face or over the telephone.") (Oath or affirmation supporting search warrant not constitutionally invalid because it was taken over the phone.); *United States v. Brooks*, 285 F.3d 1102, 1106 (8th Cir. 2002) (same).

Indeed, parties are entitled to stipulate that "procedures governing or limiting discovery be modified[.]" Fed. R. Civ. P. 29(b). Additionally, the Court may "for good cause, issue an order to protect a party or person from . . . undue burden or expense, including . . . specifying terms . . . for . . . discovery[.]" Fed. R. Civ. P. 26(c)(1)(B). Here, Plaintiff was more than

willing to stipulate to the admissibility of a remote deposition taken before a local court reporter or agree to entry of a Court order regarding same to obviate the potential complexities of deposing a foreign witness remotely and save both parties time and money.  Defendant made *no* effort to obtain a stipulation, seek a court order, or otherwise work with Plaintiff to take Mr. Patzer's deposition.

### 2.  Mr. Patzer is *Not* Plaintiff's Agent

Defendant conclusorily asserts that "Patzer is essentially an agent of Plaintiff.   An investigator that is hired . . . to investigate certain aspects of this litigation is acting as Plaintiff's representative or agent."  Motion, p. 7.  This is blatantly false.  Mr. Patzer is an independent contractor of Excipio GmbH, a German company.   He has absolutely nothing to do with Malibu Media, LLC, a California based limited liability company.  That Excipio provided evidence in this lawsuit does not make Mr. Patzer Malibu Media's agent or representative.  Indeed, when asked at the last hearing at which he testified, Mr. Patzer stated that Malibu Media only constitutes about three percent (3%) of Excipio's total business.  *See* Exhibit A, at p. 215:24-25, p. 216:1-2.

### 3.  Mr. Patzer Previously Testified in Person in the Bellwether Trial in Pennsylvania

Attempting to impugn Plaintiff's use of Excipio to detect the infringement in this case and many others filed across the country, Defendant claims that Plaintiff's "German witnesses are so elusive[.]"  Motion, p. 8.  In that same paragraph, however, Defendant cites to Plaintiff's bellwether trial in the Eastern District of Pennsylvania, *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779 (E.D. Pa. 2013), in which Mr. Patzer testified in person.  His testimony is approximately forty (40) pages long and can be found on the docket in that case.  Neither Mr. Patzer nor any of Plaintiff's other witnesses are elusive.  All are ready, able, and

willing to participate in the litigation provided that the appropriate discovery channels are used. Defendant failed to make use of the appropriate discovery channels.

### F.  Mr. Patzer Will Not Testify About Defendant's Liability

As stated above, Mr. Patzer's only job at trial is to testify about the infringement detection system and to introduce the computer and business records it generated.  The system only detects the IP addresses that are being used to infringe.  The system cannot detect who may have used the IP address to commit the infringement.  As such, Mr. Patzer has no opinion regarding whether or not Defendant, personally, is liable.  Therefore, his report contains no such statements and Defendant's argument that "Patzer has presented no evidence connecting the IP address to the Defendant personally" is irrelevant.  Motion, p. 12.

### G.  Neither Mr. Patzer nor Excipio is Subject to Florida State Licensing Requirements

Neither Mr. Patzer nor Excipio is subject to Florida state licensing laws for private investigators in the state of Florida, Fla. Stat. Chapter 493.  "Florida's strong presumption against extraterritorial application of its law prohibits its application in this case. Florida courts have consistently declined to apply Florida law outside territorial boundaries unless a statute contains an 'express intention that its provisions are to be given extraterritorial effect.'"  *Boehner v. McDermott*, 332 F. Supp. 2d 149, 155 (D.D.C. 2004) *aff'd,* 441 F.3d 1010 (D.C. Cir. 2006) and *aff'd,* 484 F.3d 573 (D.C. Cir. 2007) (*citing Burns v. Rozen,* 201 So.2d 629, 630 (Fla. 1st DCA 1967); and *Southeastern Fisheries Ass'n, Inc. v. Dep't of Natural Res.,* 453 So.2d 1351, 1355 (Fla.1984)).  Excipio is a company organized and existing under the laws of Germany.  It is not a Florida entity.  Excipio does not operate in Florida.  Mr. Patzer does not work in Florida. Excipio has no representatives and pays no taxes in Florida.  Here, Defendant sent pieces of Malibu's copyrighted movies to Germany where the infringement was recorded.  Defendant's IP

17

address was not geolocated to a place within this district until *after* the infringement occurred. Accordingly, at the time the infringement occurred and was logged there was no way of knowing where Defendant resided.

Plaintiff's investigator's software only received information that was already <u>publicly</u> available to the thousands of users on the BitTorrent system.  Indeed, a computer utilizing Defendant's IP address willfully connected to the investigator's server and offered the information.  "There is no expectation of solitude or seclusion when a person activates a file sharing program and sends a file to the requesting computer . . . a user expects millions of other users to view and copy her files, each time receiving the very information that [Defendant] sent to [the investigator] and . . . recorded." *Capitol Records, Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *4 (D. Minn. 2009).  The *Capitol Records* court held that the Minnesota Private Detectives Act, a similar law to that at issue here, had no application because the plaintiff's investigator was located outside of the state, had no employees within the state, conducted no activities within the state, paid no taxes within the state, and had no agent within the state.  "Merely monitoring incoming internet traffic sent from a computer in another state is insufficient . . . ." *Id. See also Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 257 (D. Me. 2008) (peer-to-peer file sharing case denying argument that because plaintiff's investigator was not licensed in Maine, the court should not have relied on the information it gathered in issuing expedited discovery order.)  Similarly here Excipio merely monitored incoming internet traffic sent from a computer in another state and doing so is insufficient to constitute a violation of Florida's private investigator licensure laws.  In this case, Defendant connected to Plaintiff's server and directly transmitted to Plaintiff pieces of Plaintiff's movies.  Plaintiff's investigator simply recorded those voluntary transmissions.

Attempting to claim that the licensure requirements apply here, Defendant claims that "Chapter 493 applies because the investigation was on a modem located in Florida."  Motion, p. 16.  Defendant's argument is vague; no investigation was performed by Mr. Patzer or Excipio on Defendant's modem.  Defendant attempts to rely on *France v. France*, 90 So. 3d 860, 864 (Fla. Dist. Ct. App. 2012) in support of this argument.  The *France* case does not stand for the proposition that an out-of-state investigator who received information distributed from a computer with an IP address located within Florida is required to be licensed in the State of Florida.  *France* dealt with whether or not there was personal jurisdiction over a defendant who recorded telephone calls with a Florida resident from outside of the State of Florida.  The Court concluded that personal jurisdiction was proper and also noted "for Ms. France to have committed an act that allowed for a civil remedy under section 934.10, it would seem to be necessary that her conduct in North Carolina constituted a criminal violation of section 934.03 in Florida.  We question whether Ms. France's conduct would subject her to criminal prosecution in this state." *Id.*

Finally, the determination of what constitutes a violation of Fla. Stat. Chapter 493 is left to the Department of Agriculture and Consumer Services.  *See* Fla. Stat. 493.6121(1) ("The department shall have the power to enforce the provisions of this chapter . . . and . . . to cause to be investigated any suspected violation thereof or to cause to be investigated the business and business methods of any licensed or unlicensed person . . . under this chapter.")  Federal courts have little interest in ascertaining whether a Florida state licensing statute has been violated.  Regardless, under the laws of the State of Florida, courts do not have jurisdiction or authority to ascertain whether a licensing statute has been violated.  *See also e.g. Malibu Media, LLC v. John Doe*, 1:13-cv-08484, CM/ECF 25, at p. 5 (N.D. Ill. March 24, 2014) (rejecting an

identical argument under Illinois law stating, "Doe is asking the Court to determine what constitutes the unlicensed practice of private investigation, but that is a determination left to the Illinois Department of Financial and Professional Regulation.")

### H.  Florida State Licenses Are *Not* A Prerequisite to Being a Witness

Regardless of the fact that the licensing requirements have no application in this case, licensure within the state of Florida is *not* a prerequisite to the admissibility of expert testimony. "Rather, the appropriate inquiry on qualifications is whether [the witness] is 'an expert by knowledge, skill, experience, training, or education.'"  *Mark Principi v. Survivair, Inc.*, No. 604CV476ORLJGG, 2005 WL 5961991, at *2 (M.D. Fla. Oct. 18, 2005) (denying motion *in limine* on grounds that expert was not licensed in Florida) (*quoting* Fed.R.Evid. 702.)  Indeed, "[p]reclusion of an otherwise qualified expert for lack of license in his specialty in the State of Florida is an abuse of discretion and amounts to reversible error."  *Id.* (*citing Rose v. Stale of Florida,* 506 So.2d 467, 470-71 (Fla.Dist.Ct.App.1, 1987).)  *See also St. Cyr v. Flying J Inc.*, 2007 WL 2406999, at *5 (M.D. Fla. 2007) ("this Court will not prohibit Flying J from eliciting expert testimony from LaDon Richardson based on the single fact that he does not hold a Florida license under Florida Statute § 493.6100 *et seq.*"); *Malbrough v. State Farm Fire & Cas. Co.*, 1996 WL 565819, at *2 (E.D. La. 1996) ("[A] license is not a prerequisite to expert testimony under the Federal Rules."); *Dillon Cos., Inc. v. Hussmann Corp.*, 163 Fed.Appx. 749, 756 (10th Cir. 2006) (finding that "there is no authority that an expert . . . . is not qualified to testify because he was not licensed in the state where the trial occurred.")  *Accord McRunnel v. Batco Mfg.*, 917 F. Supp. 2d 946, 952 (D. Minn. 2013) ("The Court holds that licensing in the jurisdiction of the lawsuit is not a prerequisite for admissibility under Rule 702.") *Calvetti v.*

*Antcliff*, 346 F. Supp. 2d 92, 112 (D.D.C. 2004) ("Courts frequently admit the testimony of experts even if the expert is not licensed to practice in the jurisdiction in which the court sits.")

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motion.

Dated:  October 30, 2015.

Respectfully submitted,

LIPSCOMB EISENBERG & BAKER, PL

By: */s/ Jason H. Cooper*
**Jason H. Cooper, Esq.**
Florida Bar No. 98476
jcooper@lebfirm.com
**M. Keith Lipscomb, Esq.**
Florida Bar No. 429554
klipscomb@lebfirm.com
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: */s/ Jason H. Cooper*